Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/21/2016 09:08 AM CDT

STATE OF NEBRASKA, APPELLEE, V.
LARRY G. MARTINEZ, APPELLANT.
___ N.W.2d ___

Filed October 21, 2016.    No. S-15-881.

1. **Statutes: Appeal and Error.** Statutory interpretation presents a question of law, which an appellate court reviews independently of the lower court's determination.
2. **Criminal Law: Appeal and Error.** In a criminal case, an appellate court reviews findings of fact for clear error.
3. **Mental Competency: Appeal and Error.** The trial court's determination of competency will not be disturbed unless there is insufficient evidence to support the finding.
4. **Rules of Evidence.** In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility.
5. **Jury Instructions: Judgments: Appeal and Error.** Whether jury instructions given by a trial court are correct is a question of law. When dispositive issues on appeal present questions of law, an appellate court has an obligation to reach an independent conclusion irrespective of the decision of the court below.
6. **Pretrial Procedure: Rules of Evidence.** In a criminal case, the Nebraska rules of evidence do not apply at suppression hearings.
7. **Mental Competency: Trial.** The test of mental competency to stand trial is whether the defendant now has the capacity to understand the nature and object of the proceedings against him or her, to comprehend his or her own condition in reference to such proceedings, and to make a rational defense.

   Appeal from the District Court for Cheyenne County: DEREK C. WEIMER, Judge. Affirmed.

Sarah P. Newell, of Nebraska Commission on Public Advocacy, for appellant.

Douglas J. Peterson, Attorney General, and Erin E. Tangeman for appellee.

HEAVICAN, C.J., WRIGHT, MILLER-LERMAN, CASSEL, STACY, KELCH, and FUNKE, JJ.

HEAVICAN, C.J.

## INTRODUCTION

Larry G. Martinez was convicted of first degree murder and use of a weapon to commit a felony. He was sentenced to life imprisonment for the murder conviction and an additional 10 to 50 years' imprisonment for the use conviction, with credit for 1,149 days' time served. Martinez appeals. Primarily at issue are whether Martinez' statements to law enforcement should be suppressed as a result of Martinez' hearing impairment and whether Martinez was competent to stand trial. We affirm.

## FACTUAL BACKGROUND

Martinez was romantically involved with the victim, Mandy Kershman. The record shows that this relationship was tumultuous, with the couple fighting often. About a week prior to the murder, Martinez told one of his roommates that he was "going to kill that fucking bitch," referring to Kershman.

On July 18, 2012, at approximately 4:50 p.m., Kershman was shot and killed while sitting on the couch at a friend's home. The cause of death was a single gunshot wound to her chest.

At the time of the shooting, Kershman was alone in the living room; her friend, Leland Blake, was on the computer in the next room. Blake testified that Kershman had told him Martinez was planning to come over and that immediately prior to the shooting, Blake heard Martinez' voice in the next room with Kershman. Blake testified that Kershman

and Martinez were engaged in some type of verbal altercation. Moments later Blake heard gunshots, and upon entering the living room Blake found Kershman dead on the couch. Through the window, Blake saw Martinez entering his vehicle and driving away.

Martinez was subsequently located and questioned about the shooting. During the course of that interview, Martinez admitted that he shot Kershman and told law enforcement where to find the weapon. In addition, Martinez admitted to one of his roommates that he shot Kershman. A gun was located in Martinez' house in the place he had indicated. That weapon was consistent with the type of weapon used to shoot Kershman. Because of the type of weapon used, it was not possible to conclusively find that the gun found in Martinez' home was the murder weapon. Martinez was arrested and eventually charged with first degree murder.

Martinez filed a motion to suppress the statements he made to law enforcement. He argued that he suffered from a hearing impairment, that under Neb. Rev. Stat. § 20-152 (Reissue 2012) he was entitled to an interpreter, and that failure to provide an interpreter required that the statements obtained in the absence of the interpreter should be suppressed.

On the motion to suppress, two experts, including one retained by the State, testified by deposition that Martinez suffered from a hearing impairment. Lay witnesses, including Martinez' relatives and friends, testified as to their observations when communicating with Martinez. The officers and other individuals involved in Martinez' police interview and subsequent incarceration were also questioned as to their observations of Martinez' ability to communicate. The general consensus from those witnesses was that no one was aware that Martinez suffered from any hearing impairment; however, the State does not otherwise contest that Martinez is, in fact, hearing impaired. Following this hearing, the motion to suppress was denied.

Martinez' defense at trial was that he shot Kershman during a sudden quarrel and, thus, was guilty of manslaughter. Evidence of Kershman and Martinez' relationship was offered. Of most import to Martinez' defense was a text message Kershman sent to Martinez shortly before the murder, wherein Kershman told Martinez that she "want[ed] a man to take care of me and not bitch about there [sic] money." Following a jury trial, however, Martinez was convicted of first degree murder and use of a weapon to commit a felony.

After trial, but prior to sentencing, Martinez' counsel sought to have Martinez examined for competency. A hearing was held at which two defense experts testified that Martinez was incompetent and that because Martinez' incompetency was based upon his intellectual functioning, it was unlikely that his competency could be restored. A witness for the State testified that Martinez was competent. In addition, the State offered the testimony of several lay witnesses who testified as to their observations and interactions with Martinez. The district court found Martinez to be competent, and he was sentenced to life imprisonment for the murder conviction, plus an additional 10 to 50 years' imprisonment for the use of a weapon conviction.

Martinez appeals.

## ASSIGNMENTS OF ERROR

On appeal, Martinez assigns, restated and consolidated, that the district court erred in (1) denying his motion to suppress his statements made to law enforcement, (2) finding him competent to stand trial, and (3) instructing the jury with regard to sudden quarrel manslaughter.

## STANDARD OF REVIEW

[1] Statutory interpretation presents a question of law, which an appellate court reviews independently of the lower court's determination.[1]

---

[1] *State v. Raatz*, 294 Neb. 852, 885 N.W.2d 38 (2016).

[2] In a criminal case, an appellate court reviews findings of fact for clear error.[2]

[3] The trial court's determination of competency will not be disturbed unless there is insufficient evidence to support the finding.[3]

[4] In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility.[4]

[5] Whether jury instructions given by a trial court are correct is a question of law. When dispositive issues on appeal present questions of law, an appellate court has an obligation to reach an independent conclusion irrespective of the decision of the court below.[5]

## ANALYSIS

### MOTION TO SUPPRESS

In his first assignment of error, Martinez argues that the district court erred in denying his motion to suppress statements made to law enforcement, because those statements were made without the presence or assistance of an interpreter, to which Martinez claims he was entitled by virtue of § 20-152. In connection with this assignment of error, Martinez also argues that the district court erred in admitting layperson testimony at the suppression hearing and violated Neb. Const. art. II, § 1.

Section 20-152 provides:

> Whenever a deaf or hard of hearing person is arrested and taken into custody for an alleged violation of state law or local ordinance, the appointing authority shall

---

[2] See *State v. Woldt*, 293 Neb. 265, 876 N.W.2d 891 (2016).

[3] *State v. Grant*, 293 Neb. 163, 876 N.W.2d 639 (2016).

[4] *State v. Newman*, 290 Neb. 572, 861 N.W.2d 123 (2015).

[5] *State v. Rask*, 294 Neb. 612, 883 N.W.2d 688 (2016).

procure a licensed interpreter for any interrogation, warn-
ing, notification of rights, or taking of a statement, unless
otherwise waived. No arrested deaf or hard of hearing
person otherwise eligible for release shall be held in cus-
tody solely to await the arrival of a licensed interpreter. A
licensed interpreter shall be provided as soon as possible.
No written or oral answer, statement, or admission made
by a deaf or hard of hearing person in reply to a ques-
tion of any law enforcement officer or any other person
having a prosecutorial function may be used against the
deaf or hard of hearing person in any criminal proceed-
ing unless (1) the statement was made or elicited through
a licensed interpreter and was made knowingly, volun-
tarily, and intelligently or (2) the deaf or hard of hearing
person waives his or her right to an interpreter and the
waiver and statement were made knowingly, voluntarily,
and intelligently. The right of a deaf or hard of hearing
person to an interpreter may be waived only in writing.
The failure to provide a licensed interpreter pursuant to
this section shall not be a defense to prosecution for the
violation for which the deaf or hard of hearing person
was arrested.

A "deaf or hard of hearing person" is defined in Neb. Rev. Stat.
§ 20-151(3) (Supp. 2015) as

a person whose hearing impairment, with or without
amplification, is so severe that he or she may have dif-
ficulty in auditorily processing spoken language without
the use of an interpreter or a person with a fluctuating or
permanent hearing loss which may adversely affect the
ability to understand spoken language without the use of
an interpreter or other auxiliary aid.

In its order, the district court found that Martinez was not
"deaf or hard of hearing" for purposes of the statute. On appeal,
Martinez argues that he has been diagnosed with a hearing
impairment by two audiologists and that his impairment meets
the definition of "deaf or hard of hearing" under the statute.

The State agrees that Martinez has a hearing impairment, but contends that the record shows that Martinez does not meet the definition under the statute because he does not have difficulty auditorily processing or understanding spoken language without an interpreter.

Before addressing the underlying question, we address Martinez' contention that the district court erred in allowing lay witnesses to testify about Martinez' hearing. Martinez asserts that § 20-152 operates technically and that only the testimony of an audiologist suffices to show a hearing loss. Martinez then argues that lay testimony is "inappropriate, irrelevant, confusing, and ultimately inadmissible under Neb. Rev. Stat. §§ 27-104, 401, 403, 602 and 701."[6]

Martinez cites to no case law to support the assertion that lay testimony is inadmissible. Other jurisdictions have permitted the offering of such testimony of evidence tending to either show or not show that a defendant is deaf or hard of hearing.[7]

Moreover, we note that the witnesses in question did not testify as to Martinez' ability to hear, but, rather, testified only to their own perception of whether Martinez was able to communicate with them without using an interpreter. As discussed below, this is relevant to the question of whether Martinez was deaf or hard of hearing for purposes of the statute.

[6] Finally, we note that in a criminal case, the rules of evidence do not apply at suppression hearings.[8] As such, we find that the district court did not abuse its discretion in admitting lay witness testimony.

---

[6] Brief for appellant at 8.

[7] See, *State v. Kail*, 760 N.W.2d 16 (Minn. App. 2009); *Hollaman v. State*, 312 Ark. 48, 846 S.W.2d 663 (1993). See, also, *People v. Demann*, No. 268657, 2007 WL 2404534 (Mich. App. Aug. 23, 2007) (unpublished opinion).

[8] See *State v. Piper*, 289 Neb. 364, 855 N.W.2d 1 (2014).

We turn to the underlying question of whether the district court erred in finding that Martinez was not deaf or hard of hearing for purposes of § 20-152. Under that statute, a deaf or hard of hearing person is defined as someone whose hearing impairment is so severe that the use of an interpreter or other auxiliary aid is necessary to process or understand spoken language. The district court found Martinez did not meet this definition.

A review of the DVD of the interview with law enforcement shows that Martinez, who was not wearing hearing aids at the time, had no trouble following along, conversing, and engaging in the interview. Throughout the 25-minute interview, Martinez tracked questions and answered appropriately. He never indicated that he had any trouble hearing the officers.

On the few occasions that Martinez answered in a way that suggested he did not understand, the question was repeated, and Martinez then appropriately responded. The interviewing officer would often repeat back Martinez' answer, and Martinez would confirm that that was what he had said. The interview DVD also shows that Martinez corrected the officers when they misstated what he had said. And the DVD shows that Martinez gave more than "yes" or "no" answers and on a few occasions offered unsolicited, but on topic, statements.

In addition to responding to the interviewing officer, Martinez is seen on the DVD responding to the other officer who was in the room and sitting off to one side. According to the officers' testimonies, Martinez followed all verbal commands given during his arrest, even those made when Martinez was turned away from the officer. This supports the finding that Martinez was not deaf or hard of hearing as defined by the statute.

Evidence from other witnesses also supports the finding that Martinez did not need an interpreter or auxiliary aid to process or understand spoken language. Most people who

testified had no idea that Martinez suffered from a hearing impairment. The district court's findings regarding Martinez' ability to process and understand spoken language without an interpreter were not clearly erroneous. As such, the district court did not err in denying the motion to suppress.

Having concluded that the district court did not err in finding that Martinez was not deaf or hard of hearing under the statute, we also reject Martinez' assertion that the district court's adoption of a new standard violated the separation of powers clause of the Nebraska Constitution.

Martinez' first assignment of error is without merit.

### COMPETENCY

In his second assignment of error, Martinez assigns that the district court erred in finding that he was competent. He also argues that the district court erred in admitting the testimony of lay witnesses at this hearing.

Neb. Rev. Stat. § 29-1823(1) (Reissue 2008) states in part that "[i]f at any time prior to trial it appears that the accused has become mentally incompetent to stand trial, such disability may be called to the attention of the district court by the county attorney, by the accused, or by any person for the accused."

The procedural posture of this case is unusual in that Martinez' competency was not challenged until after his conviction, but before his sentencing. However, there is no dispute that the court can determine Martinez' competency at any time, including after trial but prior to final judgment, and that, in fact, it is the obligation of the court to do so.[9]

[7] This court will affirm the district court's decision if there is sufficient evidence to support its finding. The test of mental competency to stand trial is whether the defendant

---

[9] See, *Drope v. Missouri*, 420 U.S. 162, 95 S. Ct. 896, 43 L. Ed. 2d 103 (1975); *U.S. v. Arenburg*, 605 F.3d 164 (2d Cir. 2010). See, also, 21 Am. Jur. 2d *Criminal Law* § 90 (2016).

now has the capacity to understand the nature and object of the proceedings against him or her, to comprehend his or her own condition in reference to such proceedings, and to make a rational defense.[10]

As an initial matter, Martinez argues—as he did with respect to the denial of his motion to suppress—that the district court erred in admitting the testimony of lay witnesses on the issue of his competency. But the record is clear that these witnesses did not testify as to Martinez' competency, but, rather, testified as to their interactions with and observations of Martinez. This evidence is admissible to rebut or corroborate the testimony of the expert witnesses relating to Martinez' competency. The district court did not abuse its discretion in allowing this testimony.

We turn to our review of the district court's determination regarding competency. In this case, two experts testified that Martinez was not competent. The first, Dr. Linda Hunter, was originally retained to conduct IQ testing to assist with sentencing. Hunter determined that Martinez' full scale IQ was 57, with a verbal IQ of 55, and a performance IQ of 64. Hunter also performed other testing which suggested that Martinez had "significant issues in his cognitive ability," with an extremely low range of intellectual functioning.

Hunter was present for the entirety of the competency hearing and eventually reviewed outside materials, including letters and prison kites authored by Martinez. Hunter testified on rebuttal that the additional evidence did not change her opinion. In addition, Hunter indicated that because Martinez' incompetency was based upon his intellectual functioning, it was not likely that Martinez could be restored to competency. Hunter also testified that she did not believe Martinez was malingering.

Dr. Y. Scott Moore also testified that he believed Martinez was not competent and that it was not likely that Martinez

---

[10] *State v. Guatney*, 207 Neb. 501, 299 N.W.2d 538 (1980).

could be restored to competency due to the nature of his incompetency. Moore administered no standardized tests during his evaluation, but did review the testing done by Hunter. Moore reviewed a partial transcript of the trial and some evidence presented at trial. Moore testified that he was concerned that Martinez was not able to answer many of his questions. Moore testified that Martinez could have been malingering but that he did not believe that this was so. Moore also asserted that he was able to "look [Martinez] in the eyes" to see if he was telling the truth. Moore testified that he relied on answers provided by Martinez and did not investigate those answers further. Moore reviewed the evidence presented at the competency hearing and testified on rebuttal that it did not change his opinion that Martinez was not competent.

Dr. Carl Greiner testified for the State. Greiner testified that it was his opinion that Martinez was malingering and that he was competent to stand trial. Greiner testified that prior to his evaluation of Martinez, he reviewed materials, including Hunter's evaluations and letters and prison kites written by Martinez; Martinez' employment, personal, medical, and criminal history; and the events surrounding Kershman's death. Greiner indicated that it was his opinion that Martinez was deliberately underperforming during his examination and that the extrinsic evidence supported the conclusion that Martinez understood the legal process.

In addition to the experts, several lay witnesses testified as to their observations about Martinez that might reflect upon his competency. The evidence presented showed that Martinez had been employed most recently as janitorial staff at both a fast-food restaurant and a grocery store. Martinez had held other, labor-intensive jobs in his adult life. One of those jobs required a "license" obtained through testing with the employer to drive a certain type of equipment. Martinez also obtained a driver's license, although the record reflects that it did take him several attempts to pass that examination.

Following his arrest for Kershman's murder, Martinez was found to be an insulin-dependent diabetic; nurses at the Diagnostic and Evaluation Center (D&E) where Martinez was confined pending trial and sentencing testified as to his ability to manage his condition, including monitoring his own blood sugars by taking his own blood sample, reviewing those results, and determining what additional dosage was required beyond his maintenance dose. Martinez was taught this upon his arrival at D&E, and witnesses testified that he was able to accept and retain instruction on this matter after only a few times. In custody, Martinez has also sought assistance as required for repairs relating to his eyeglasses and hearing aids.

Other witnesses from D&E testified that Martinez was quiet, polite, and respectful, with one witness even describing Martinez as an ideal inmate. Martinez was presentable in clothing and attire, and was where he should be when he should be there. Martinez maintained employment as a cleanup porter at D&E and trained new hires.

One witness from D&E described an incident where Martinez discussed that a hearing had been canceled due to a personal matter involving his attorney. The record shows Martinez was aware of how long he has been in custody. The record also shows that Martinez engaged in allowed social activities at D&E, including playing cards and a least looking at books, newspapers, and magazines. There was some evidence, in the form of letters and prison kites written by Martinez, to suggest that Martinez could read and write at a level more advanced than he admitted to during his competency evaluations. Though counsel suggested that Martinez might have had help writing the letters and prison kites, there was no evidence offered to show that was the case.

Another witness was Martinez' ex-wife, who testified that when married to Martinez, Martinez appeared to compile sports statistics and do the accompanying arithmetic. Martinez' ex-wife also testified that she once filed for a

protection order against Martinez and that he appeared in court on the matter. Martinez also had a criminal record with a prior conviction and incarceration for a felony, but there was no indication that his competency was challenged at any point in the past.

A finding of competency will be upheld if there is sufficient evidence to support it. In this case, Greiner testified that Martinez was competent. Other witnesses testified as to Martinez' interactions with them, further suggesting competency. This evidence was sufficient for Martinez to be found competent. Martinez' second assignment of error is without merit.

### JURY INSTRUCTIONS

In his third assignment of error, Martinez argues that the district court erred in its instructions regarding the definition of the term "deliberation" and erred in not instructing the jury that as an element of first degree murder, the State must disprove that Martinez acted on a sudden quarrel.

Specifically, Martinez notes that this court held in *State v. Hinrichsen*[11]:

> In future cases, however, it would be a better practice for courts, in first degree murder cases in which evidence of provocation has been adduced by the defendant, to clarify the definition of deliberation. We encourage courts in such cases to define "deliberate" to mean "not suddenly or rashly, but doing an act after first considering the probable consequences. An act is not deliberate if it is the result of sudden quarrel provocation."

Accordingly, Martinez argues that the jury should have been instructed that in addition to meaning "'not suddenly or rashly,'" "'an act is not deliberate if it is the result of sudden quarrel provocation.'"[12]

---

[11] *State v. Hinrichsen*, 292 Neb. 611, 636, 877 N.W.2d 211, 228 (2016).

[12] Brief for appellant at 8.

Martinez argues that *Hinrichsen* created a new rule and that the district court's error in the instructions is plain error. We disagree. We specifically noted in *Hinrichsen* that the jury instructions as given were not reversible error, but the additional instruction might be a "better practice" going forward. And we cannot fault the district court for not complying with our "better practice" when this case was tried almost 2 years before our decision in *Hinrichsen*.

For the same reason—that the jury instructions in *Hinrichsen* were not reversible error—we conclude that Martinez' argument with respect to the elements of first degree murder are without merit. We note, though, that the jury was instructed in the definition of "Sudden Quarrel" that "[p]rovocation . . . negates malice," another issue in *Hinrichsen*.

There is no merit to Martinez' third assignment of error.

### CONCLUSION

The decision of the district court is affirmed.

Affirmed.