Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/03/2019 09:08 AM CDT

State of Nebraska, appellee, v.
Larry G. Martinez, appellant.
___ N.W.2d ___

Filed March 15, 2019.    No. S-18-618.

1. **Postconviction: Constitutional Law: Appeal and Error.** In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief.

2. **Effectiveness of Counsel: Proof: Words and Phrases: Appeal and Error.** To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. To show prejudice under the prejudice component of the *Strickland* test, the defendant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different. A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome.

3. **Effectiveness of Counsel: Proof.** The two prongs of the ineffective assistance of counsel test under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), may be addressed in either order.

4. **Postconviction: Constitutional Law: Judgments.** Postconviction relief is available to a prisoner in custody under sentence who seeks to be released on the ground that there was a denial or infringement of his or her constitutional rights such that the judgment was void or voidable.

5. **Postconviction: Constitutional Law: Proof.** In a motion for postconviction relief, the defendant must allege facts which, if proved,

constitute a denial or violation of his or her rights under the U.S. or Nebraska Constitution, causing the judgment against the defendant to be void or voidable.

6. ____: ____: ____. A court must grant an evidentiary hearing to resolve the claims in a postconviction motion when the motion contains factual allegations which, if proved, constitute an infringement of the defendant's rights under the Nebraska or federal Constitution.

7. **Postconviction: Proof.** If a postconviction motion alleges only conclusions of fact or law, or if the records and files in the case affirmatively show that the defendant is entitled to no relief, the court is not required to grant an evidentiary hearing.

8. **Postconviction: Appeal and Error.** A motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal.

9. **Confessions: Police Officers and Sheriffs.** Coercive police activity is a necessary predicate to a finding that a confession is not voluntary.

10. **Effectiveness of Counsel.** Defense counsel is not ineffective for failing to raise an argument that has no merit.

11. **Homicide: Intent: Proof: Words and Phrases.** The deliberation element of first degree murder means not suddenly or rashly, and requires the State to prove that the defendant considered the probable consequences of his act before committing it.

12. **Homicide: Intent: Time: Proof.** The premeditation element of first degree murder requires the State to prove that a defendant formed the intent to kill a victim before doing so, but no particular length of time for premeditation is required.

13. **Criminal Law: Intent: Time: Proof.** A defendant may, with appropriate evidence, try to defeat a charge by proving that at the time the offense occurred, the defendant lacked the ability to intend the voluntary and probable consequences of his or her act.

Appeal from the District Court for Cheyenne County: DEREK C. WEIMER, Judge. Affirmed.

Jerrod P. Jaeger for appellant.

Douglas J. Peterson, Attorney General, and Erin E. Tangeman for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, and PAPIK, JJ.

Papik, J.

Larry G. Martinez was convicted by a jury of first degree murder and use of a firearm to commit a felony. We affirmed his convictions and sentences on direct appeal. See *State v. Martinez*, 295 Neb. 1, 886 N.W.2d 256 (2016). Martinez filed a motion for postconviction relief, which was denied without an evidentiary hearing. Martinez appeals the denial of his motion for postconviction relief without an evidentiary hearing, and we affirm.

## BACKGROUND

*Events Surrounding Death of Victim.*

We provided a summary of the facts regarding this case on direct appeal, and we quote from that opinion at length below.

> Martinez was romantically involved with the victim, Mandy Kershman. The record shows that this relationship was tumultuous, with the couple fighting often. About a week prior to the murder, Martinez told one of his roommates that he was "going to kill that fucking bitch," referring to Kershman.
>
> On July 18, 2012, at approximately 4:50 p.m., Kershman was shot and killed while sitting on the couch at a friend's home. The cause of death was a single gunshot wound to her chest.
>
> At the time of the shooting, Kershman was alone in the living room; her friend, Leland Blake, was on the computer in the next room. Blake testified that Kershman had told him Martinez was planning to come over and that immediately prior to the shooting, Blake heard Martinez' voice in the next room with Kershman. Blake testified that Kershman and Martinez were engaged in some type of verbal altercation. Moments later Blake heard gunshots, and upon entering the living room Blake found Kershman dead on the couch. Through the window, Blake saw Martinez entering his vehicle and driving away.

Martinez was subsequently located and questioned about the shooting. During the course of that interview, Martinez admitted that he shot Kershman and told law enforcement where to find the weapon. In addition, Martinez admitted to one of his roommates that he shot Kershman. A gun was located in Martinez' house in the place he had indicated. That weapon was consistent with the type of weapon used to shoot Kershman. Because of the type of weapon used, it was not possible to conclusively find that the gun found in Martinez' home was the murder weapon. Martinez was arrested and eventually charged with first degree murder.

*Id.* at 2-3, 886 N.W.2d at 259.

*Trial and Sentencing.*

Prior to trial, Martinez filed a motion to suppress the statements he made in his interview with law enforcement. He argued that he suffered from a hearing impairment and that because he was not provided with an interpreter, Neb. Rev. Stat. § 20-152 (Reissue 2012) required that his statements be suppressed. The district court denied the motion to suppress, finding that Martinez was not "deaf or hard of hearing" for purposes of § 20-152. It also found that Martinez' statements were voluntary and thus not subject to suppression under *Jackson v. Denno*, 378 U.S. 368, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964).

At trial, Martinez' defense was that he shot Mandy Kershman during a sudden quarrel and, thus, was guilty of only manslaughter. Following a jury trial, however, Martinez was convicted of first degree murder and use of a firearm to commit a felony.

After trial, Martinez' counsel asked the district court to determine his mental competency to be sentenced. A hearing was held at which two defense experts testified that Martinez was incompetent, with one of those experts testifying that because Martinez' incompetency was based upon

his intellectual functioning, it was unlikely that his competency could be restored. A witness for the State testified that Martinez was competent. The State also offered the testimony of several lay witnesses who testified as to their observations and interactions with Martinez.

The district court found Martinez to be competent, and he was sentenced to life imprisonment for the murder conviction, plus an additional 10 to 50 years' imprisonment for the use of a firearm conviction.

*Direct Appeal.*

Martinez appealed. He contended that the district court erred by not suppressing his statements due to his hearing impairment and by finding him competent. This court affirmed. See *State v. Martinez*, 295 Neb. 1, 886 N.W.2d 256 (2016). We found that the district court did not err by finding Martinez was not deaf or hard of hearing for purposes of § 20-152. We explained that the video of Martinez' interview with law enforcement showed that he was able to follow along and answer questions appropriately without an interpreter or hearing aids. Additionally, we noted the testimony of acquaintances of Martinez who did not even know that he suffered from a hearing impairment.

We also concluded that the evidence was sufficient for Martinez to be found competent. While two experts testified that Martinez was incompetent due to his low level of intellectual functioning, a third expert testified that it was his opinion that Martinez was malingering and that he was competent to stand trial. We determined that this testimony, along with the testimony of several lay witnesses regarding Martinez' level of functioning, was sufficient to show that Martinez was competent. See *id*.

*Motion for Postconviction Relief.*

Martinez filed a motion for postconviction relief, asserting ineffective assistance of counsel and requesting an evidentiary hearing. Relevant to this appeal, Martinez alleged that his trial counsel was ineffective (1) for not raising his mental

capacity in support of an argument that his statements to law enforcement should have been suppressed for being involuntary and (2) for not raising an argument that his mental capacity precluded him from acting with the premeditation, deliberation, and intent necessary to be found guilty of first degree murder.

The district court denied Martinez' motion without an evidentiary hearing. In its order, the district court reasoned that Martinez could have raised both of the claims at issue in this appeal in his direct appeal, but did not. The district court also found that, even if it was assumed that Martinez' counsel provided deficient representation, Martinez could not demonstrate he was prejudiced.

Martinez timely appealed.

## ASSIGNMENTS OF ERROR

Martinez assigns, restated, that the trial court erred by denying him postconviction relief without an evidentiary hearing on his claims that his counsel was ineffective for not raising his mental capacity (1) in support of an argument that his statements to law enforcement were involuntary and (2) in support of an argument that he could not have formed the requisite deliberation, premeditation, and intent to commit the crimes charged.

## STANDARD OF REVIEW

[1] In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief. *State v. Tyler*, 301 Neb. 365, 918 N.W.2d 306 (2018).

## ANALYSIS

*Legal Standards.*

Martinez contends that the district court erred by dismissing his claims of ineffective assistance of counsel without

an evidentiary hearing. His appeal thus requires us to apply the familiar framework for ineffective assistance of counsel claims set forth by the U.S. Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). We briefly review aspects of that framework relevant to this appeal, as well as standards governing postconviction relief before proceeding to Martinez' assignments of error.

[2,3] To prevail on a claim of ineffective assistance of counsel under *Strickland*, the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Taylor*, 300 Neb. 629, 915 N.W.2d 568 (2018). To show prejudice under the prejudice component of the *Strickland* test, the defendant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different. *Taylor, supra.* A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome. *Id.* The two prongs of this test may be addressed in either order. See *id.*

[4,5] Postconviction relief is available to a prisoner in custody under sentence who seeks to be released on the ground that there was a denial or infringement of his or her constitutional rights such that the judgment was void or voidable. *Id.* Thus, in a motion for postconviction relief, the defendant must allege facts which, if proved, constitute a denial or violation of his or her rights under the U.S. or Nebraska Constitution, causing the judgment against the defendant to be void or voidable. *Taylor, supra.*

[6,7] A court must grant an evidentiary hearing to resolve the claims in a postconviction motion when the motion contains factual allegations which, if proved, constitute an infringement of the defendant's rights under the Nebraska or federal Constitution. *Taylor, supra.* If a postconviction motion alleges only conclusions of fact or law, or if the records and files in

the case affirmatively show that the defendant is entitled to no relief, the court is not required to grant an evidentiary hearing. *Id.*

*Waiver.*

As noted above, the district court found that Martinez had waived his ineffective assistance of counsel claims by failing to raise them on direct appeal. Martinez argues this was incorrect, and we agree.

[8] It is true that a motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal. *State v. Hessler*, 288 Neb. 670, 850 N.W.2d 777 (2014). This rule, however, is not applicable in this case. Martinez was represented by the same counsel at trial and on direct appeal. This motion for postconviction relief was thus his first opportunity to assert claims of ineffective assistance of counsel. See *Taylor, supra*.

While the district court was incorrect in finding that Martinez waived his claims of ineffective assistance of counsel, it also found that Martinez' claims failed on their merits. We now turn to consider the merits of his claims of ineffective assistance of counsel.

*Voluntariness of Statements.*

Martinez acknowledges that the district court determined his statements to law enforcement were voluntary prior to trial. He contends, however, that his counsel provided deficient representation by not raising his mental capacity when the voluntariness of his statements was under consideration. He points to the fact that, after trial, two medical professionals found him to be incompetent, with one finding him to have an "extremely low IQ." He contends that had his counsel introduced evidence of his mental capacity at the time the court was considering the voluntariness of his statements, there is a reasonable probability the court would have found those statements to be involuntary and therefore would have suppressed

them. In support of this argument, Martinez directs us to cases from both this court and the Nebraska Court of Appeals in which it has been observed that the intelligence, education, and background of the accused are factors that can be considered in determining whether a defendant's statement was voluntary or coerced. See, e.g., *State v. Erks*, 214 Neb. 302, 333 N.W.2d 776 (1983); *State v. Grimes*, 23 Neb. App. 304, 870 N.W.2d 162 (2015).

[9] But while the intelligence, education, and background of the accused are factors that may be relevant to whether a confession was voluntary, we have also repeatedly held that coercive police activity is a necessary predicate to a finding that a confession is not voluntary. See *State v. Hernandez*, 299 Neb. 896, 911 N.W.2d 524 (2018) (collecting cases). As we have explained, "[t]he prohibition on the use of involuntary confessions is at its core—like other constitutional rights—a limitation on the power of government. Thus, the focus of this inquiry is on the conduct of governmental actors." *Id.* at 914, 911 N.W.2d at 540.

On appeal, Martinez has not even attempted to identify any coercive conduct by the two law enforcement officers who interviewed him. The video of that interview makes clear that he could not do so. The video shows that neither law enforcement officer made threats or promises to Martinez. The officers did not raise their voices or otherwise attempt to intimidate him. Rather, they sat with Martinez, who was not in handcuffs or shackled when the statements were made, and calmly engaged him in conversation. Neither officer touched Martinez, invaded his physical space, or brandished a weapon. The entire interview was also relatively short, lasting less than 40 minutes. In sum, nothing the law enforcement officers did in their interview with Martinez could be described as coercive.

[10] In the absence of any evidence of coercion, an emphasis on Martinez' mental capacity could not have rendered his statements to law enforcement involuntary. Because defense counsel is not ineffective for failing to raise an argument that

has no merit, see *State v. Stricklin*, 300 Neb. 794, 916 N.W.2d 413 (2018), we find no error in the denial of this claim without an evidentiary hearing.

*Premeditation, Deliberation, and Intent.*

[11,12] Martinez also contends that his trial counsel was ineffective for failing to argue that his mental capacity precluded him from committing first degree murder. To convict Martinez of first degree murder, the State was required to show that he killed Kershman purposely and did so with deliberate and premeditated malice. See *State v. Braesch*, 292 Neb. 930, 874 N.W.2d 874 (2016). The deliberation element means not suddenly or rashly, and requires the State to prove that the defendant considered the probable consequences of his act before committing it. *Id.* The premeditation element requires the State to prove that a defendant formed the intent to kill a victim before doing so, but no particular length of time for premeditation is required. *Id.*

[13] In Martinez' appellate brief, he claims that because of his diminished capacity, he was not capable of acting with the deliberation, premeditation, and intent necessary to commit first degree murder. We have held that a defendant may, with appropriate evidence, try to defeat a charge by proving that at the time the offense occurred, the defendant lacked the ability to intend the voluntary and probable consequences of his or her act. See *State v. Urbano*, 256 Neb. 194, 589 N.W.2d 144 (1999).

Martinez contends his counsel should have investigated his mental capacity prior to trial and suggests that if they had, the experts who testified at his competency hearing could have testified at trial. Martinez' motion points to the testimony from medical professionals that he was incompetent and had a low IQ as evidence that his counsel should have presented at trial. This testimony, however, was countered both by a witness for the State who testified that Martinez was competent, as well as by several lay witnesses who testified to

their observations and interactions with Martinez which suggested competency.

Even if counsel should have investigated Martinez' mental capacity and introduced the evidence Martinez points to, however, Martinez must still prove that he was prejudiced by a failure to do so. In a number of cases, courts have held that defendants who claim that their counsel should have introduced evidence of a mental limitation and argued that the limitation rendered them unable to act with the necessary intent could not establish prejudice in light of factual evidence introduced at trial showing that they did act with the necessary intent. See, e.g., *Hernandez v. Chappell*, 913 F.3d 871 (9th Cir. 2019); *Howard v. Horn*, 56 F. Supp. 3d 709 (E.D. Pa. 2014); *Morales v. Vaughn*, 619 Fed. Appx. 127 (3d Cir. 2015); *Wallace v. Smith*, 58 Fed. Appx. 89 (6th Cir. 2003). We believe that is the case here.

Had evidence regarding Martinez' intellectual functioning been introduced at trial, we see no reasonable probability it could have overcome all of the evidence introduced at trial showing that Martinez deliberately killed Kershman. About a week before Kershman was killed, Martinez told his roommate that he was "'going to kill that fucking bitch,'" referring to Kershman. Then in his interview with police, Martinez told the officers that he planned to shoot Kershman after she sent him a text message that made him angry and that when he drove over to Blake's house, he did so with the intention of shooting her. Blake testified that he heard Martinez say "this is for you, bitch," just prior to the gunshot. After the shooting, Martinez told his roommate that he shot Kershman, and he hid the gun under a coffee table in his house.

All of the facts recounted above demonstrate that Martinez intended to kill Kershman, that he formed the intent to kill her before doing so, and that he was capable of and did consider the probable consequences of his act before committing it. We find no reasonable probability that the testimony Martinez argues his counsel should have elicited at trial regarding his

mental capacity could have overcome this evidence and produced a different result. Because the records and files show no reasonable probability that the result of the proceeding would have been different, we find the district court did not err in denying Martinez postconviction relief without an evidentiary hearing. See *State v. Lyle*, 258 Neb. 263, 603 N.W.2d 24 (1999).

## CONCLUSION

We find that the district court did not err in denying Martinez' motion for postconviction relief without an evidentiary hearing, and thus affirm.

AFFIRMED.

FREUDENBERG, J., not participating.