IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. ALLRIGHT

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

SUSAN K. ALLRIGHT, APPELLANT.

Filed April 14, 2026.    No. A-25-732.

Appeal from the District Court for Otoe County: JULIE D. SMITH, Judge. Affirmed.

Brooklyn G. Terrill, of the Nebraska Commission on Public Advocacy, for appellant.

Michael T. Hilgers, Attorney General, and P. Christian Adamski for appellee.

MOORE, BISHOP, and WELCH, Judges.

BISHOP, Judge.

## I. INTRODUCTION

Susan K. Allright pleaded no contest to first degree assault and attempted possession of a deadly weapon (firearm) by a prohibited person. The Otoe County District Court sentenced her to an aggregate of 30 to 70 years' imprisonment. Allright appeals, arguing there was an insufficient factual basis to support her conviction for first degree assault. She also claims that the district court imposed excessive sentences and that her trial counsel was ineffective in various ways. We affirm.

## II. BACKGROUND

On April 7, 2025, the State filed an amended information charging Allright with five counts: count I, first degree assault, a Class II felony, pursuant to Neb. Rev. Stat. § 28-308 (Reissue 2016); count II, use of a deadly weapon (firearm) to commit a felony, a Class IC felony, pursuant to Neb. Rev. Stat. § 28-1205(1)(a) and (c) (Cum. Supp. 2024); count III, tampering with physical evidence, a Class II felony, pursuant to Neb. Rev. Stat. § 28-922(1)(a) and (3)(b) (Cum. Supp.

2024); and counts IV and V, possession of a deadly weapon (firearm) by a prohibited person, Class ID felonies, pursuant to Neb. Rev. Stat. § 28-1206(1)(a) and (3)(b) (Reissue 2016).

A plea hearing was held on June 30, 2025. Pursuant to a plea agreement, the State amended count IV (possession of deadly weapon (firearm) by prohibited person) to reflect the lesser-included offense of attempt of a Class ID felony, pursuant to Neb. Rev. Stat. § 28-201 (Reissue 2016). The State dismissed counts II, III, and V. Allright then entered no contest pleas on count I (first degree assault) and count IV (attempted possession of a deadly weapon by a prohibited person) of the amended information.

The State offered an affidavit of probable cause authored by Deputy Zachary Kliegl of the Otoe County Sheriff's Office to establish a factual basis for Allright's pleas. According to the contents of the affidavit, on April 17, 2024, Deputy Kliegl was called to the residence of Kirk Proplesch for a reported disturbance. Allright lived with Proplesch "for many years" and they had "adult children in common." Upon his arrival, the deputy made contact with Proplesch outside the home and observed that Proplesch had "blood on the front of his face." Proplesch told Deputy Kliegl that Allright had shot him with a firearm, "which caused him an injury on the head." Proplesch explained that he was sleeping in his bed and was suddenly awakened after hearing a "'crack' at approximately 2:30 to 3:00 a.m." Proplesch noticed that he was bleeding, got up from his bed, cleaned his wound, and attempted to discuss his injury with Allright, who was in the kitchen. Allright reportedly "shrug[ged] the wound off." Proplesch then returned to his bedroom and slept for "approximately 1 hour." He again woke up and saw Allright standing next to the bed with her hand behind her back. Proplesch thought Allright's behavior "was odd because she was holding her right hand behind her back," and when he asked her what she was doing, she replied, "'Just checking on you.'" Proplesch got out of bed and found that Allright was holding a firearm behind her back. He "retrieved the weapon" and hid it in a boot near the front of the home. Proplesch waited for Allright to fall asleep on a recliner chair in the living room before exiting the home and calling "911."

Law enforcement found Allright asleep on a recliner chair. They questioned her "about the disturbance," but she denied knowing about "any incident." She was wearing clear plastic gloves on her hands; she said she made her own "lotion/hand cream and wears these gloves." Allright stated that Proplesch "drinks everyday and often falls and passes out on his own," and has been "suicidal everyday since 2020."

Proplesch was transported to a local emergency room where medical staff conducted an MRI and observed "[o]ne [wound] near the front and one [wound] on the top of his head." Bullet fragments were recovered "within the wound area," and there was gunshot residue "on one wound" and the "second wound appeared to be an exit wound." Medical personnel concluded that Proplesch's injuries were "consistent with a gunshot wound to the head." A search of Proplesch's residence yielded a ".22 revolver" that was "seized from the boot near the kitchen." The revolver was fully loaded, and a single "spent casing" was found in the weapon. Proplesch told police that the revolver belonged to Allright. He indicated that a "verbal argument regarding Allright's infidelity occurred prior to this incident." Allright had previously been convicted of a felony in 2008, and a certified copy of that conviction was received by the district court without objection.

Finding a sufficient factual basis, the district court accepted Allright's no contest pleas, found her guilty of the charged crimes, and set the matter for sentencing.

A sentencing hearing was held on August 25, 2025. The district court sentenced Allright to consecutive terms of incarceration on each count, for an aggregate term of 30 to 70 years' imprisonment. She was given credit for 71 days served.

Allright appeals.

### III. ASSIGNMENTS OF ERROR

Allright assigns, reordered and restated, that the district court erred in (1) determining there was a sufficient factual basis to support her conviction for first degree assault and (2) imposing excessive sentences. She also assigns that (3) her trial counsel was ineffective for failing to (a) adequately advise her of the potential penalties, (b) investigate her claim that Proplesch's injuries "were self-inflicted," and (c) object to an inadequate factual basis for serious bodily injury.

### IV. STANDARD OF REVIEW

A trial court is afforded discretion in deciding whether to accept guilty pleas, and an appellate court will reverse the trial court's determination only in case of an abuse of discretion. *State v. Wilkinson*, 293 Neb. 876, 881 N.W.2d 850 (2016).

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Sutton*, 319 Neb. 581, 24 N.W.3d 43 (2025).

An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. *State v. Hagens*, 320 Neb. 65, 26 N.W.3d 174 (2025). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.*

### V. ANALYSIS

#### 1. FACTUAL BASIS

Allright contends that the factual basis offered by the State at the plea hearing was insufficient to support a finding of guilt for first degree assault. She does not challenge the State's factual basis as it relates to her conviction for attempted possession of a weapon (firearm) by a prohibited person.

When a court accepts a defendant's plea of guilty or no contest, the defendant is limited to challenging whether the plea was understandingly and voluntarily made and whether it was the result of ineffective assistance of counsel. *State v. Wilkinson, supra*. A sufficient factual basis is a requirement for finding that a plea was understandingly and voluntarily entered and hence valid. *State v. Ettleman*, 303 Neb. 581, 930 N.W.2d 538 (2019). That is, if there was not a sufficient factual basis, the plea was not made understandingly and voluntarily and therefore the court should not have accepted the plea. *Id.*

To ascertain the sufficiency of a factual basis, an appellate court identifies the elements of the statute under which the defendant was convicted and determines whether the factual basis

offered meets those elements. See *State v. Wilkinson, supra*. Pursuant to § 28-308(1), "[a] person commits the offense of assault in the first degree if he or she intentionally or knowingly causes serious bodily injury to another person." Serious bodily injury means "bodily injury which involves a substantial risk of death, or which involves substantial risk of serious permanent disfigurement, or protracted loss or impairment of the function of any part or organ of the body." Neb. Rev. Stat. § 28-109(21) (Reissue 2016).

Allright argues that the gunshot wounds suffered by Proplesch, as described in the affidavit of probable cause, do "not rise to the standard of what has been previously held to qualify as serious bodily injury" under Nebraska caselaw. Brief for appellant at 22. To support this contention, she directs us to *State v. Billups*, 209 Neb. 737, 311 N.W.2d 512 (1981), *disapproved on other grounds, State v. Hammond*, 315 Neb. 362, 996 N.W.2d 270 (2023). In *Billups*, the Nebraska Supreme Court determined that "shooting one in the chest above the heart in such a manner that the bullet must be dug out and the wound sutured" satisfied the statutory definition of serious bodily injury. 209 Neb. at 745, 311 N.W.2d at 517. However, as Allright points out, the court also cautioned that not "every shooting of another is automatically a serious bodily injury." *Id.* While Allright apparently concedes that Proplesch did sustain gunshot wounds to the head, she asserts these injuries were relatively minor and amounted to "a small burn and a mild concussion." Brief for appellant at 22.

We disagree with Allright's characterization of the injuries in this case. The affidavit of probable cause offered by the State at the plea hearing showed that Deputy Kliegl observed Proplesch with "blood on the front of his face." Proplesch was subsequently transported to an emergency room for his injuries. Medical staff conducted an MRI, noticed two wounds on Proplesch's head, and concluded his injuries were "consistent with a gunshot wound to the head." Gunshot residue was located on "one wound" and the "second wound appeared to be an exit wound." Bullet fragments were also located "within the wound area." Although the Nebraska Supreme Court has not yet had occasion to decide the particular level of probable guilt or standard of proof applicable to the factual basis inquiry, see *State v. Ettleman, supra*, it has long stated that a trial court is accorded discretion in deciding whether to accept a guilty or no contest plea. See *State v. Clemens*, 300 Neb. 601, 915 N.W.2d 550 (2018). Here, it was reasonable for the district court to conclude that Proplesch's gunshot wounds to the head, as described in the affidavit of probable cause offered by the State, constituted a substantial risk of death, permanent disfigurement, or protracted loss or impairment of the function of any part or organ of the body. We cannot say the court abused its discretion in finding the State's factual basis sufficient and accepting Allright's no contest plea for first degree assault.

### 2. EXCESSIVE SENTENCES

Allright claims the district court abused its discretion by imposing excessive sentences.

Allright was convicted of first degree assault and attempted possession of a weapon (firearm) by a prohibited person, both Class II felonies, each punishable by 1 to 50 years' imprisonment. See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2024). She was sentenced to 20 to 50 years' imprisonment for the first degree assault conviction and a consecutive term of 10 to 20 years' imprisonment for the firearm conviction, for an aggregate term of 30 to 70 years' imprisonment. Allright's sentences are within the statutory limits. As such, we review the district

- 4 -

court's sentencing determination only for an abuse of discretion. See *State v. Sutton*, 319 Neb. 581, 24 N.W.3d 43 (2025) (where sentence imposed within statutory limits is alleged to be excessive, appellate court must determine whether sentencing court abused its discretion in considering and applying relevant factors, as well as any applicable legal principles in determining sentence to be imposed).

In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id.* The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

Allright was 55 years old at the time of sentencing. According to the presentence investigation report (PSR), Allright had one living child, and she described their relationship as "'really good.'" Allright was diagnosed with peripheral artery disease sometime after her arrest, and her right leg had to be amputated above the knee. She had an associate degree but was unemployed due to her disability.

The PSR revealed several prior criminal convictions, including: "DUI-1st offense" in 2002 (6 months' probation and $400 fine); "(OWI)/1st offense" in 2005 (30 days' jail, 1 year's unsupervised probation, and $500 fine); "DUI-cause serious bodily injury" in 2008 (4 months' jail and 3 years' probation (early release)); "Issue bad check $0-500" in 2017 ($50 fine); and "Assault-3rd degree" in 2021 (2 days' jail and $50 fine).

As part of the presentence investigation, a "Level of Service/Case Management Inventory" (LS/CMI) was conducted, and Allright was assessed at an overall "[m]edium [h]igh" risk to reoffend. She scored in the "[h]igh" risk range in the criminogenic risk factor domain for alcohol/drug problems. She scored in the "[m]edium" risk range in the domains for criminal history, family/marital, leisure/recreation, and companions. She scored in the "[l]ow" risk range in the domains for procriminal attitude and antisocial pattern. She scored in the "[v]ery [l]ow" risk range in the domain for education/employment.

At the sentencing hearing, Allright's counsel asked the district court to consider a sentence of probation. In support of this request, counsel noted that Allright "ha[d] generally led a fairly law-abiding life" and had only one previous felony conviction. Counsel also indicated that recent events in Allright's life had been "extremely difficult" on her. These events included the death of her second child and complications related to her diabetes. Counsel asserted that Allright reported drinking "at least 15 beers" on the night of the shooting, and it "certainly is possible" that she "has no memory" of the incident that led to her convictions.

Allright exercised her right to allocution:

> I understand the seriousness of the charges I've pled to, and I am willing and able to correct the characteristic flaws that have brought me to court today.
>
> I would hope that you would take into consideration my character reference letters when considering my sentence and, also, my extensive medical issues. I would pray that you would find rehabilitation through classes and probation suitable in this instance.

The State recommended an unspecified term of incarceration "because probation would diminish the seriousness of [Allright's] actions" and "take away from everything that happened."

The district court also considered a "Crimes Against Persons Victim Impact Questionnaire" authored by Proplesch. In it, Proplesch wrote that the shooting "haunts" him, and he lives in fear. He reportedly moved out of his home "because it was too overwhelming to remain." Proplesch explained that he suffers from PTSD, migraines, and anxiety attacks that "significantly impair[] [his] daily functioning." He had reoccurring "nightmares and flashbacks" and struggled with "constantly feel[ing] claustrophobic." The court also received character letters written in support of Allright.

The district court stated on the record that it had taken into consideration the contents of the PSR, Proplesch's written statement, the character letters written in support of Allright, and all representations made at the sentencing hearing. The court indicated that it was "a little taken aback" by Allright's request for probation, given the circumstances surrounding the shooting. Allright was then sentenced as set forth previously.

On appeal, Allright largely argues that the district court failed to take into account various mitigating factors. She points to her "minimal criminal record," her "wheelchair-bound" status, and the "close relationship" she has with her daughter. Brief for appellant at 13. However, having reviewed the record, we cannot say the district court abused its discretion in sentencing Allright. See *State v. Rivera-Meister*, 318 Neb. 164, 14 N.W.3d 1 (2024) (no abuse of discretion in sentence imposed when review of record shows sentencing court considered relevant sentencing factors and did not consider any inappropriate factors).

### 3. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Allright's remaining assignments of error allege her trial counsel was ineffective in several ways.

As articulated previously, a voluntary guilty plea or plea of no contest waives all defenses to a criminal charge. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019). Thus, when a defendant pleads guilty or no contest, he or she is limited to challenging whether the plea was understandingly and voluntarily made and whether it was the result of ineffective assistance of counsel. *Id.* Allright has different counsel on direct appeal than she did in the district court. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020). Once raised, the appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. *Id.* A record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice, or that trial counsel's actions could not be justified as part of any plausible trial strategy. *State v. Theisen*, 306 Neb. 591, 946 N.W.2d 677 (2020). When a claim of ineffective assistance of trial counsel is raised on direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *State v. Lierman, supra.*

Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show

counsel's performance was deficient and that the deficient performance actually prejudiced the defendant's defense. *State v. Blaha, supra*. To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* When a conviction is based upon a guilty or no contest plea, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty or no contest. *Id.* The two prongs of the ineffective assistance of counsel test under *Strickland* may be addressed in either order. *State v. Blaha, supra*.

### (a) Failure to Advise of Potential Penalties

Allright first claims that her trial counsel was deficient by "failing to inform [her] of the potential penalties associated with the charges in the plea agreement." Brief for appellant at 18. She purportedly "wanted to go to trial" and only agreed to the plea agreement after having "conversations" with her trial counsel wherein it was intimated that "she would receive a 5-7-year probation sentence." *Id.* at 17. The State contends the "record is insufficient on direct appeal" to address this claim. Brief for appellee at 11. We find the record sufficient to refute Allright's claim.

Even if we assume that Allright's trial counsel was deficient in the ways alleged, no prejudice can be demonstrated. Prior to Allright's case being bound over to the district court, she was arraigned in the county court on the charge of first degree assault. In a journal entry and order entered on April 19, 2024, the county court noted it had advised Allright of the "possible penalties" associated with the assault allegation. Further, at the June 30, 2025, plea hearing, the following colloquy was had between Allright and the district court:

> [The Court:] The Amended Information charges you with two counts: Count I is first-degree assault. You were already advised of that penalty because Count I remains unchanged.
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Count II is dismissed. Count III is dismissed. Count IV is reduced to attempted possession of a firearm by a prohibited person, first offense. That is a Class II felony. The possible penalty for a Class II felony is one to 50 years' incarceration. There is no mandatory minimum. Do you understand the charges and the possible penalties.
>
> THE DEFNDANT: Yes, Your Honor.
>
> THE COURT: If I accept your plea, the Court is not bound by any sentencing recommendation made by either attorney, and I would be free to sentence you within the boundaries of the law. Do you understand?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Even if some charges against you are being dismissed or reduced, the Court is free to take into account any and all circumstances when deciding a potential sentence. Do you understand?
>
> THE DEFENDANT: Yes, Your Honor.

The colloquy shows that Allright (1) was informed of and acknowledged the possible penalties associated with her plea agreement and (2) understood that the district court was free to sentence her within the statutory limits, notwithstanding any recommendation made by her trial

counsel. When confronted with this information at the plea hearing, Allright still decided to proceed. Therefore, she cannot show a reasonable probability that but for the alleged errors of counsel, she would have insisted on going to trial rather than pleading no contest.

## (b) Failure to Investigate

Allright claims that her trial counsel was ineffective for failing to investigate "alternative theories for what caused [] Proplesch's injuries." Brief for appellant at 19. She argues another plausible explanation for Proplesch's injuries was an attempted suicide, and if trial counsel had adequately investigated this theory by interviewing friends and relatives, Allright would have insisted on going to trial rather than entering her no contest pleas. The State contends the record is sufficient to refute this claim. We agree.

The record on appeal affirmatively refutes this claim of deficient performance. At the plea hearing, the district court made the following inquiry:

> THE COURT: Have you had enough time to talk to your attorney about your case?
> THE DEFENDANT: Yes, Your Honor.
> THE COURT: Have you told your attorney everything you know about this case and discussed all possible defenses you may have?
> THE DEFENDANT: Yes, Your Honor.
> THE COURT: Do you want any more time to talk to your attorney before you enter your plea?
> THE DEFNDANT: No. Thank you, Your Honor.
> THE COURT: Are you satisfied with the job your attorney has done for you on this case?
> THE DEFENDANT: Yes, Your Honor.

In this exchange, Allright represented to the district court that she had discussed all possible defenses with her trial counsel and that she was satisfied with counsel's performance. Nowhere in her brief does Allright challenge the knowingness and voluntariness of these averments. Based on Allright's clear and unchallenged admissions in the record, her trial counsel's performance was not deficient as a matter of law. See *State v. Chairez*, 302 Neb. 731, 924 N.W.2d 725 (2019) (trial counsel not ineffective for failing to interview exculpatory witnesses where statements made during plea colloquy demonstrated defendant told counsel everything he knew about case and was satisfied with counsel's work).

## (c) Failure to Object to Factual Basis

Allright claims that her trial counsel was ineffective for failing to object to the State's factual basis as it related to the charge of first degree assault. Having previously rejected Allright's contention that the factual basis for the assault charge was insufficient, her trial counsel was not ineffective for failing to object. Defense counsel is not ineffective for failing to raise an argument that has no merit. *State v. Martinez*, 302 Neb. 526, 924 N.W.2d 295 (2019).

## VI. CONCLUSION

For the foregoing reasons, we affirm Allright's convictions and sentences.

AFFIRMED.