IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE V. WILEY

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

CLAYTON M. WILEY, APPELLANT.

Filed February 9, 2021.    No. A-20-110.

Appeal from the District Court for Lancaster County: KEVIN R. MCMANAMAN, Judge. Affirmed.

Matthew K. Kosmicki for appellant.

Douglas J. Peterson, Attorney General, and Jordan Osborne for appellee.

RIEDMANN, BISHOP, and WELCH, Judges.

WELCH, Judge.

## I. INTRODUCTION

Clayton M. Wiley appeals his convictions of third degree domestic assault and negligent child abuse and the sentences imposed thereon. Wiley assigns thirteen errors to this court, which can be consolidated into the following broad issues: (1) the district court erred in holding an enhancement hearing after vacating the original sentence imposed by the court for third degree domestic assault with no evidence of a prior conviction, (2) the sentences imposed were excessive, and (3) trial counsel was ineffective. For the reasons set forth herein, we affirm.

## II. STATEMENT OF FACTS

During the second week of April 2019, Samantha Jacobe, a 36-year-old single mother, met Wiley on a dating app. Jacobe and Wiley communicated primarily by texting or voice calls. On the evening of April 27, Wiley and Jacobe spent the evening visiting downtown bars in

- 1 -

Lincoln, Nebraska. After leaving a bar at 2 a.m., Jacobe and Wiley went back to her apartment where they had consensual sexual intercourse. After this night, Wiley lived at Jacobe's home spending every night there with her and her three children, 11-year-old Aden E. and Jacobe's 6-year-old twins.

The following day, Sunday, April 28, 2019, Wiley, Jacobe, and Jacobe's children went to an entertainment center in Omaha. Jacobe testified that Wiley was "being distant" and would not tell her the reason for his mood. On the return drive to Lincoln, Jacobe and Wiley started arguing and Wiley threatened twice to "bust" or "punch" her face.

During the period of time that Wiley lived in Jacobe's home, the parties continued to engage in consensual intercourse. Wiley introduced Jacobe as "his girlfriend or girl" and Jacobe described their relationship as a "domestic partnership" and that she and Wiley were "dating."

Jacobe testified that, during the afternoon of May 5, 2019, Wiley texted Jacobe that he had lost between $500 and $600 and wanted her to "help him come up with [the money]." Jacobe refused stating that she did not "have that kind of money right now" which caused Wiley to become angry and state that he was coming to the house to "get his stuff." Jacobe described the events that transpired after Wiley arrived at her home:

> We argued quite a bit back and forth. He had me kind of barricaded in the bathroom trying to talk to me. One minute he was . . . set to go and then the next [minute] he would just kind of flip, it was just like something triggered in him and he would try and convince me like let's not throw this away, let's talk about this. And this went on probably for about two, two and a half hours.
>
> . . . .
>
> So after about maybe two hours of fighting he swore he heard my son outside the bathroom window, listening to us, and I said that he's not there. So when we went out to the living room Aden was sitting on the front porch and he told Aden to go outside and play with his friends, to stop being nosy, and Aden kind of snapped back to him because [Wiley] and Aden have obviously had their run-ins and at that point [Wiley] took off running after [Aden] across the street, chasing him down. [Wiley] grabbed [Aden] by his arm, caught him and then [with] his hand around the back of his neck . . . [Wiley] brought [Aden] back across the street and kind of tossed him onto the couch.
>
> And at that point I knew . . . it was bad and so I grabbed Aden and I put him in his room and I just said, "Stay here," and so at that point [Wiley and I] went down to my bedroom, it was in the basement, to pack his stuff like he insisted I always had to stay with him. If I tried to leave the room he would grab my arm and pull me back. One time he had me . . . pinned down to the bed, pinching. It left some bruises.
>
> After he finally got the stuff we went back upstairs and he thought like maybe if we just try one more time, so he was like let's not throw this away, let's talk. And I said no, you need to go. There's nothing to talk about.
>
> I went into the bathroom for something and he came in and he shut the door and he's like, "Well, I want the money that you stole from me." And I said I didn't take your money. I'm not paying it. And he said, "I'm gonna get my money one way or the other," and I tried to push him away to get out of the bathroom and his hand came up around my

throat and he shoved me back against the window [causing my head to "smack against the windowsill"].

> And at that point I remember . . . his phone coming up against my face. He smacked my face with it and shattered his screen. The phone flew out of his hand and then he proceeded to punch me in the nose.

Jacobe testified that she was able to fight off Wiley, exit the bathroom, and get to the living room where she told Aden to call 911. Wiley came out of the bathroom, left the home, ran across the street, grabbed Aden by the neck and arm and drug him back into the house ripping Aden's shirt in the process. Jacobe testified that Aden screamed "You're hurting me" and that Aden was "scared," "angry," and "terrified." Aden corroborated Jacobe's testimony that Wiley grabbed the tank top he was wearing ripping it and that he felt "angry," "sad," and "scared." Jacobe stated that at that point, Wiley

> threw a towel at me and told me to clean up, that the cops would be coming, and then he just became kind of arrogant about it. He said he'd cracked his phone and took mine and started calling his mom, family, somebody saying that, you know, the cops were coming, he was gonna be arrested and he said, "But that's okay if I'm arrested. She'll be gone, too." Instinct just set into me to survive [because] he had told me that if he went to jail that I could kiss my life good-bye, too, so I just said, "No. There's no cops. I'm not calling the cops. Let's just go. I'll take you to your house. Let's just get out of here," and I finally even just said . . . "Let's go get that money you think I took."

Jacobe stated that she and Wiley went to an ATM where she withdrew money to give to Wiley. After removing the money from the ATM, Wiley told Jacobe "I better not go to jail for this 'cause you'll pay." Jacobe did not call the police but she did tell her best friend what happened. Jacobe explained that she did not call the police because "[a]fter the incident happened with the threats, I just kind of went into survival mode, threatening my life, disappearing from my children, so I was scared and thought he would hold good to those threats and I just didn't." She further testified that she

> went into survival mode. In the short time I knew [Wiley] I knew that he was doing good on what he said and your worst fear as a parent is to leave your kids without a parent. And I had to protect them and my best way was just to get him as far away from us as possible and leave it. I just went into survival mode. I didn't want anybody else to know what had happened.

The following Monday, May 6, 2019, police contacted Jacobe and, on May 6 and 7, officers photographed her May 5 injuries. The testimony and photographs establish that Jacobe suffered from a black eye, scratches on her neck and shoulder, and bruising on her face, neck, chest, and right arm. Jacobe testified that the photograph received into evidence as exhibit 4 showed bruising from Wiley's fingerprints from where he grabbed her around the neck. A photo of the shirt that Wiley ripped off of Aden was admitted into evidence as exhibit 10.

In October 2017, the State charged Wiley with third degree domestic assault with a prior conviction, a Class IIIA felony, and negligent child abuse, a Class I misdemeanor. See Neb. Rev.

Stat. § 28-323(1) and (4) (Reissue 2016) (third degree domestic assault); Neb. Rev. Stat. § 28-707(1) and (3) (Reissue 2016) (child abuse). The State later amended the charges to change the date of the alleged offenses from May 4 to May 5, 2019.

Prior to trial, the State filed a motion in limine which asked the court to prohibit Wiley from eliciting testimony or introducing evidence during trial relating to any specific instances of violence allegedly committed by Jacobe; Jacobe's prior misdemeanor conviction for attempted unlawful acts or conveyance of an article to an inmate; and any instance in which Jacobe was alleged to have possessed or conveyed contraband inside a correctional institution. The State argued that such evidence was not proper character evidence nor was it permissible impeachment evidence. During the pretrial hearing, Wiley's attorney informed the court that he did not plan to introduce at trial any specific incidences of violence committed by Jacobe. The court granted the State's motion in limine but informed Wiley, "Now, understanding it is a motion in limine and if you want to make a record during the trial, you're certainly allowed to. We'll excuse the jury at a proper time if necessary."

The jury trial was held on January 7 and 8, 2020. During trial, evidence was admitted as previously set forth. The jury convicted Wiley of both third degree domestic assault and child abuse.

On the morning of February 6, 2020, the district court held the sentencing hearing. During the hearing, the court informed Wiley that it had considered his age, mentality, education, experience, social background, cultural background, and all the information contained in the presentence investigation report. The court then stated:

> Your past criminal record, which those, you know I mentioned your age, only 31, but, you know, just starting -- lots of assaults and there's DUI's in there and . . . alcohol, open container, things like that.
>
> But, you know, a domestic assault in 2015, another assault in 2015. The first one was dismissed, the second one you got 20 to 60 months and then domestic assault in the third you got 12 months on that one -- on those two at that time.
>
> And then assault by a confined person in 2016 that was dropped to assault in the third degree. 2019 and the domestic assault third degree with priors and child abuse. And then this assault on an officer in the newer case, which became attempted assault on an officer.
>
> So, you know, I'm looking at the past criminal record and motivation for the offense and nature of the offense and presence or absence of violence and a lot of violence in both those offenses. And the nature of both of those offenses is violence and the motivation seems to be, you know, when you don't get what you want you get frustrated or angry, and I don't know if there's a great deal of motivation to justify any of this stuff. It doesn't seem like it, but you might have it figured out in your head where you look back on it and think somehow it's justified.
>
> But there's motivation behind it and I think whether you try and justify it or not, there's motivation that you're not getting what you want, somebody's doing something you don't like and you react angrily, violently. And even when you're already incarcerated and, you know . . . it's pretty clear that anything you do there is gonna be seen and reported and there's gonna be consequences, but you still do it.

I mean it's good what you said about . . . trying to get back in working on some of the anger management, things like that. It doesn't make any sense, you know, that the second case occurred while you were already locked up and the first one didn't really make sense, either, but the second one when you're already locked up doesn't make any sense. Clearly, you're gonna get caught doing that.

So . . . you have to be highly motivated to strike out like that -- to strike out when . . . obviously . . . there are witnesses and cameras, and so I've considered all those things.

The court then noted that it had the safety of the community to consider and that people have to be deterred from committing violent acts. The court found that there were substantial and compelling reasons not to place Wiley on probation including that the crime caused or threatened serious harm, there was no reason to excuse or justify the offense, Wiley had not led a law-abiding life for a substantial period of time prior to the offenses, and a lesser sentence would depreciate the seriousness of the crime and would promote disrespect for the law. The district court then sentenced Wiley to 2 years' imprisonment followed by 18 months' postrelease supervision for third degree domestic assault with credit for 91 days served. The court sentenced Wiley to 6 months' imprisonment for child abuse. The sentences were ordered to be served consecutively, consecutive to any sentence currently being served, and consecutively to the sentence imposed in case No. CR 20-50. That same afternoon, the district court resumed the sentencing hearing stating:

[A]fter the hearing earlier today the court became aware that the State had not sought to enhance the charge pending against [Wiley] in this case, and as a result, there was a sentence purportedly imposed earlier today but frankly, it was an illegal sentence and void ab initio. So as a result, the court will vacate the prior order of sentence [on the third degree domestic assault with a prior conviction] and we're here on sentencing and enhancement.

The court then held an enhancement hearing during which the State offered into evidence the transcript of Wiley's 2016 conviction of third degree domestic assault. The court determined that Wiley had a prior conviction of third degree domestic assault, then proceeded to conduct another sentencing hearing. The court addressed Wiley stating:

I told you earlier the things the court considers in determining the appropriate sentence in this case. And I've gone through that and I did examine your age, mentality, education, experience, social/cultural background, past criminal record and law-abiding conduct, the motivation for the offense, nature of the offense and the presence of violence. And I did go through the PSI. I'm aware of your plea, your work history and prior employment, children, and safety of the community and treatment needs.

[Wiley] having been found guilty on Count I, domestic assault in the third degree with a prior conviction, and Count 2, child abuse and having regard for the nature and circumstances of the crimes and the history, character and condition of [Wiley], the court finds there is a substantial and compelling reason not to place [Wiley] on probation. A lesser sentence would depreciate the seriousness of the crime, a lesser sentence would promote disrespect for the law. The crime caused or threatened serious harm. There is no

- 5 -

reason to excuse or justify the offense and [Wiley] has not led a law-abiding [life] for a substantial period of time prior to this offense.

The court proceeded to sentence Wiley to the same sentence that was previously imposed.

## III. ASSIGNMENTS OF ERROR

On appeal, Wiley contends that (1) the district court erred by holding an enhancement hearing after vacating its initial sentence for third degree domestic assault with no evidence of a prior conviction; (2) the sentences imposed were excessive; and (3) his trial counsel was ineffective in: (a) failing to object to the State's motion in limine regarding specific acts of violence by Jacobe and failing to present the justification of self-defense; (b) failing to ensure that Wiley was dressed in street clothing and not in restraints for the trial; (c) failing to call as witnesses the "neighbor woman," Jacobe's best friend, and the lead investigating officer to test the veracity of other State witnesses; (d) failing to emphasize to the jury the inconsistent dates of the offense as testified to by witnesses; (e) failing to present evidence that Jacobe was a confidential informant for the Lincoln Police Department and involved in the sale of prescription pills to show motive for Jacobe to falsify a report; (f) in advising Wiley not to testify in his defense; (g) in failing to object to the trial court's reopening of the case to allow the State to establish enhancements after the initial sentence had been pronounced; and (h) in failing to communicate with Wiley and being unprepared for trial.

## IV. STANDARD OF REVIEW

When dispositive issues on appeal present questions of law, an appellate court has an obligation to reach an independent conclusion irrespective of the decision of the court below. *State v. Valdez*, 305 Neb. 441, 940 N.W.2d 840 (2020).

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Stack*, 307 Neb. 773, 950 N.W.2d 611 (2020).

Whether a claim of ineffective assistance of counsel may be determined on direct appeal is a question of law. *State v. Clausen*, 307 Neb. 968, 951 N.W.2d 764 (2020). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id*.

## V. ANALYSIS

### 1. HOLDING ENHANCEMENT HEARING AFTER
### VACATING INITIAL VOID SENTENCE

Wiley concedes that the district court "was correct to vacate" his original sentence because it was "illegal and void." Brief for appellant at 19, 20. However, he contends that, after vacating the initial void sentence for his conviction of third decree domestic assault with no evidence of a prior conviction, the district court erred in holding an enhancement hearing wherein the court allowed the State to introduce evidence of a prior conviction for enhancement. In doing so, Wiley

contends that the district court ceased to be impartial and "became an advocate for the State." Brief for appellant at 22.

In a proceeding to enhance a punishment because of prior convictions, the State has the burden to prove such prior convictions. *State v. Valdez, supra*. Usually, the State will prove a defendant's prior convictions by introducing certified copies of the prior convictions or transcripts of the prior judgments. *Id*. A sentence is illegal when it is not authorized by the judgment of the statutory penalty for the crime. *Id*.

Here, it is undisputed that, in imposing the original sentence for third degree domestic assault upon Wiley, the district court did not receive evidence necessary to subject Wiley to the enhanced penalties associated with conviction of third degree domestic assault with a prior conviction and that Wiley's sentence of 2 years' imprisonment followed by 18 months' postrelease supervision for third degree domestic assault with no evidence of a prior conviction exceeded the statutory limits for a Class I misdemeanor. See Neb. Rev. Stat. § 28-106 (Reissue 2016); § 28-323(4) (violation of § 28-323(1)(a) or (b) is Class I misdemeanor, except that for any subsequent violation of § 28-323(1)(a) or (b), any person so offending is guilty of Class IIIA felony). As such, the initial sentence imposed by the district court upon Wiley was unauthorized by law. "When a sentence imposed is unauthorized under law, it is void, and a void sentence is no sentence." *State v. Lotter*, 255 Neb. 456, 519, 586 N.W.2d 591, 633 (1998), *modified on denial of rehearing* 255 Neb. 889, 587 N.W.2d 673 (1999).

The legal question presented here is whether a court may hold an enhancement hearing and resentence a defendant using evidence from the enhancement hearing having failed to hold one prior to sentencing the defendant originally, which failure resulted in a void sentence. Wiley argues the district court was prohibited from doing so.

Contrary to Wiley's argument, the Nebraska Supreme Court has "consistently remanded for a new enhancement hearing when the State has failed to produce sufficient evidence of the requisite prior convictions for enhancement purposes." *State v. Valdez*, 305 Neb. at 446, 940 N.W.2d at 844. See, also, *State v. Oceguera*, 281 Neb. 717, 798 N.W.2d 392 (2011).

In *State v. Valdez*, 305 Neb. 441, 940 N.W.2d 840 (2020), the district court sentenced the defendant to enhanced motor vehicle homicide despite the State producing no evidence on the issue of enhancement. The Nebraska Supreme Court rejected Valdez' argument that based upon the State's failure to present evidence of enhancement, the cause should be remanded with instructions of the reduced charge, instead finding that the appropriate remedy was to remand for a new enhancement and sentencing hearing. Wiley argues that his case differs because it involves "the trial court realizing that it had not held an enhancement hearing, brought it to the State's attention, vacated the sentence and then allowed the State to proceed with producing evidence for purposes of enhancement." Reply brief for appellant at 3. We find Wiley's argument to provide a distinction without a difference. We see no reason why the district court's discovery of its own error in connection with the first sentencing and failure to hold an enhancement hearing should be treated any differently that an appellate court's discovery of the error. In both situations the original sentence was void and resulted in the need for resentencing. Under such circumstances, we find that *State v. Valdez, supra*, is controlling and we hold the district court properly vacated the illegal initial sentence, held an enhancement hearing, and thereafter imposed a lawful sentence. This assignment of error fails.

## 2. Excessive Sentence

Wiley's second assignment of error is that the sentences imposed were excessive. Wiley acknowledges that the sentences imposed were within the statutory limits, but claims that the district court ignored many of the relevant statutory factors in sentencing him.

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Manjikian*, 303 Neb. 100, 927 N.W.2d 48 (2019). Regarding criminal sentences, the Nebraska Supreme Court has explained:

> When imposing a sentence, the sentencing court is to consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime. However, the sentencing court is not limited to any mathematically applied set of factors. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.

*Id*. at 114-15, 927 N.W.2d at 60-61.

Here, Wiley was convicted of third degree domestic assault enhanced by a prior conviction, a Class IIIA felony, and negligent child abuse, a Class I misdemeanor. Wiley's sentence of 2 years' imprisonment followed by 18 months' postrelease supervision is within the statutory sentencing range for Class IIIA felonies which are punishable by a minimum of no imprisonment and a maximum of 3 years' imprisonment followed by 9 to 18 months' postrelease supervision and/or a $10,000 fine. See Neb. Rev. Stat. § 28-105 (Reissue 2016). Wiley's sentence of 6 months' imprisonment is within the statutory sentencing range for Class I misdemeanors which are punishable by a minimum of no imprisonment and a maximum of 1 year's imprisonment and/or a $1,000 fine. See § 28-106.

During the second sentencing hearing, the district court stated that it had considered the statutory sentencing factors including Wiley's age, mentality, education, experience, social background, cultural background, past criminal record and law-abiding conduct, the motivation for the offense, the nature of the offense, the presence of violence, Wiley's work history, the safety of the community, Wiley's treatment needs, and the information contained in the presentence investigation report.

At the time of the preparation of the presentence investigation report, Wiley was 31 years old, single, with one dependent. He has completed the ninth grade. His criminal history includes convictions for operating a motor vehicle without an operator's license, failure to signal, open alcohol container, attempted first degree domestic assault, third degree domestic assault, third degree assault, refusal to submit to a chemical test, and two convictions for driving under the influence. Subsequent to the current offenses, Wiley was convicted of attempted third degree assault on an officer or health care professional. During Wiley's prior periods of incarceration he had multiple misconduct reports including a dispute with a correctional officer and assault. Wiley admitted to using alcohol, marijuana, and prescription painkillers (without a prescription). The level of service/case management inventory assessed Wiley as a very high risk to reoffend and

Wiley scored in the high risk range on the Domestic Violence Matrix. Jacobe's victim impact statement set forth that after the incident, she "began to have nightmares" and was afraid to leave her house. She also stated that Aden has withdrawn from his friends and her youngest son has become scared of loud voices and men in general.

Based upon the factors that the sentences imposed were within the statutory sentencing ranges, Wiley's criminal history, his high risk to reoffend, the violent nature of the offenses, and the harm caused to the victims, the sentences imposed did not constitute an abuse of discretion. This assignment of error fails.

### 3. INEFFECTIVE ASSISTANCE OF COUNSEL

Wiley's third assignment of error is that his trial counsel was ineffective in (a) failing to object to the State's motion in limine regarding specific acts of violence by Jacobe and failing to present the justification of self-defense; (b) failing to ensure that Wiley was dressed in street clothing and not in restraints for the trial; (c) failing to call as witnesses the "neighbor woman," Jacobe's best friend, and the lead investigating officer to test the veracity of other State witnesses; (d) failing to emphasize to the jury the inconsistent dates of the offense as testified to by witnesses; (e) failing to present evidence that Jacobe was a confidential informant for the Lincoln Police Department and involved in the sale of prescription pills to show motive for Jacobe to falsify her report; (f) advising Wiley not to testify in his defense; (g) failing to object to the trial court's reopening of the case to allow the State to establish enhancements after the initial sentence had been pronounced; and (h) failing to communicate with Wiley and being unprepared for trial.

When a defendant's trial counsel is different from his or her counsel on direct appeal, as is the case here, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. See *State v. Sinkey*, 303 Neb. 345, 929 N.W.2d 35 (2019). Otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *Id.* The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. The determining factor is whether the record is sufficient to adequately review the question. *Id.* In order to avoid a procedural bar to a future postconviction proceeding, a claim of ineffective assistance of counsel must be presented with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to be able to recognize whether the claim was brought before the appellate court. *Id.*

Appellate courts have generally reached ineffective assistance of counsel claims on direct appeal only in those instances where it was clear from the record that such claims were without merit or in the rare case where trial counsel's error was so egregious and resulted in such a high level of prejudice that no tactic or strategy could overcome the effect of the error, which effect was a fundamentally unfair trial. *State v. Weathers,* 304 Neb. 402, 935 N.W.2d 185 (2019). An ineffective assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing. *State v. Sierra*, 305 Neb. 249, 939 N.W.2d 808 (2020).

When a claim of ineffective assistance of trial counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *State v.*

*Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020). General allegations that trial counsel performed deficiently or that trial counsel was ineffective are insufficient to raise an ineffective assistance claim on direct appeal. *State v. Weathers, supra*. An ineffective assistance of counsel claim made on direct appeal can be found to be without merit if the record establishes that trial counsel's performance was not deficient or that the appellant could not establish prejudice. *Id.*

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Iddings*, 304 Neb. 759, 936 N.W.2d 747 (2020). To show deficient performance, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *State v. Sierra, supra*. To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *State v. Weathers, supra*. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id*. The two prongs of the ineffective assistance of counsel test under *Strickland v. Washington, supra*, may be addressed in either order, and the entire ineffectiveness analysis should be viewed with a strong presumption that counsel's actions were reasonable. *State v. Weathers, supra.*

(a) Failure to Object to Motion in Limine and
Failure to Present Justification of Self-Defense

Wiley first contends that his trial counsel was ineffective in failing to object to the State's motion in limine prohibiting him from eliciting testimony or introducing evidence during trial "regarding specific acts of violence allegedly committed by [Jacobe]" and failing to present the justification of self-defense. Wiley asserts that he "was entitled by [the] Nebraska Rules of Evidence and caselaw to present evidence of [Jacobe's] violent and aggressive character to support a claim of self-defense." Brief for appellant at 24.

In *State v. Case*, 304 Neb. 829, 843, 937 N.W.2d 216, 226 (2020), the Nebraska Supreme court recently stated:

> Self-defense is a statutorily defined affirmative defense in Nebraska. *State v. Smith*, 284 Neb. 636, 822 N.W.2d 401 (2012). Neb. Rev. Stat. § 28-1409(1) (Reissue 2016) provides in relevant part that "the use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." We have interpreted § 28-1409 to mean that to successfully assert the claim of self-defense, a defendant must have a reasonable and good faith belief in the necessity of using force and the force used in defense must be immediately necessary and justified under the circumstances. *State v. Urbano*, 256 Neb. 194, 589 N.W.2d 144 (1999); *State v. Marshall*, 253 Neb. 676, 573 N.W.2d 406 (1998); *State v. Kinser,* [252 Neb. 600, 567 N.W.2d 287 (1997)]; *State v. Graham*, 201 Neb. 659, 271 N.W.2d 456 (1978).

Thus, as the State notes in its brief:

> [U]nder Neb. R. Evid. § 27-404(1)(b) evidence of a victim's aggressive and violent character, in some circumstances, may be admissible to show whether the victim was the

- 10 -

first aggressor or, if there is also evidence Wiley knew of Jacobe's alleged violent character prior to the incident, that he had a reasonable belief force was necessary. See *State v. Lewchuk*, 4 Neb. App. 165 (1995); R. Collin Mangrum, Mangrum on Nebraska Evidence § 27-404 (2020 Update).

Brief for appellee at 32.

Wiley specifically argues in his brief that he "could have argued to the jury that his actions were justified because he acted in self-defense. To bolster that assertion [Wiley] should have been able to present evidence of specific acts of violence to support that Jacobe was the initial aggressor." Brief for appellant at 24. Wiley further argues that he "repeatedly informed his trial counsel that he acted in self-defense because he was aware of Jacobe's tendency for violence, but trial counsel refused or neglected to pursue the justification of self-defense." *Id*.

We first note that we are unsure whether Wiley is arguing that there were "acts of violence" that occurred in connection with the incident which justified his conduct, or whether he is claiming he had knowledge of prior acts of violence which justified his conduct in connection with this incident. Either way, although Wiley was not required to allege prejudice in connection with this direct appeal, he is required to make specific allegations of the conduct that he claims constituted deficient performance by his trial counsel. See *State v. Devers*, 306 Neb. 429, 945 N.W.2d 470 (2020).

Here, Wiley has failed to specifically allege what specific acts of violence were committed by Jacobe, either at the time of the incident, or committed before the incident of which he was aware, that may have justified his counsel offering the evidence at trial or pursing a claim of self-defense. Having failed to state with specificity Jacobe's alleged acts of violence he claims his counsel deficiently failed to pursue, Wiley is procedurally barred from further pursuing this claim in a future postconviction proceeding.

### (b) Failure to Ensure Wiley Was Dressed in Street Clothing and Not in Restraints

Wiley next contends that his trial counsel was ineffective in failing to ensure that Wiley was dressed in street clothing and not in restraints for the trial.

The Nebraska Supreme Court has said that when an incarcerated criminal defendant makes a request to be tried in civilian clothing, that request must generally be granted. See *State v. Sorich,* 226 Neb. 547, 412 N.W.2d 484 (1987).

Here, the record reflects that Wiley had filed a motion "to appear in civilian clothes for trial for the reason that appearing in jail attire could impact the jury decision" and that motion was granted by the district court. The record also reflects that, on both days of the trial, witnesses identified Wiley as wearing "an orange shirt" and "an orange jumpsuit." The record does not reflect whether Wiley was in restraints, nor does the record disclose any reason why Wiley may have been dressed in prison clothing for his trial after his request to appear in civilian clothing was granted. Therefore, the record on appeal is insufficient for this court to adequately review this claim.

### (c) Failure to Call Witnesses

Wiley's third allegation is that trial counsel was ineffective in failing to call as witnesses the "neighbor woman," Jacobe's best friend, and the lead investigating officer to test the veracity of other State witnesses.

As we previously stated, when a claim of ineffective assistance of trial counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *State v. Devers, supra.*

Regarding Wiley's claim that his trial counsel was ineffective for failing to call the "neighbor woman" as a witness, Wiley has failed to sufficiently assert factual allegations including the name of the "neighbor woman" and what her testimony would have been that might somehow test the veracity of the other State witnesses. As a result, Wiley has failed to allege sufficient factual allegations of conduct to constitute deficient performance by trial counsel on this claim.

Regarding Wiley's claim that his trial counsel was ineffective for failing to call Jacobe's best friend and the investigatory officer, Wiley likewise fails to allege what testimony either witness would provide that might test the veracity of other State witnesses. Wiley has failed to allege sufficient factual allegations of conduct to constitute deficient performance by trial counsel on this claim.

### (d) Failure to Emphasize Inconsistent Dates

Wiley's fourth allegation is that trial counsel was ineffective in failing to emphasize to the jury the inconsistent dates of the offense as testified to by witnesses. Wiley alleges that the original information alleged the offense occurred on May 4, 2019; the amended information alleged that the offense occurred on May 5; and that the report to police did not occur until May 6. Wiley contends that emphasizing these dates would have caused the jury "to doubt the veracity of the testimony of the State's witnesses." Brief for appellant at 33.

Despite Wiley's claims, Jacobe and Aden consistently maintained that the offense occurred on May 5, 2019. The police met with Jacobe on May 6 to take her statement. The original information alleged that the offenses occurred "on or about May 4, 2019" but was later amended to reflect that the correct date was "on or about May 5, 2019." Contrary to Wiley's claim, the testimony presented at trial was not inconsistent regarding the date of the offense. Defense counsel is not ineffective for failing to raise an argument that has no merit. *State v. Martinez*, 302 Neb. 526, 924 N.W.2d 295 (2019). We find the record is sufficient to address this claim on direct appeal and find that trial counsel's performance was not deficient in relation to this claim. This claim fails.

### (e) Failure to Present Evidence Regarding Jacobe

Wiley's fifth allegation is that the trial counsel was ineffective in failing to present evidence that Jacobe was a confidential informant for the Lincoln Police Department and involved in the sale of prescription pills to show motive for Jacobe to falsify her report. In making this claim, Wiley does not allege any strategic reason governing how Jacobe's status as a confidential informant would have had any effect on her credibility regarding the May 5, 2019, assault by

Wiley. As a result, Wiley has failed to allege with sufficient particularity an allegation of conduct constituting deficient performance by trial counsel on this claim.

## (f) Advising Wiley Not to Testify in His Defense

Wiley's sixth allegation is that trial counsel was ineffective in advising Wiley not to testify in his defense.

A defendant has a fundamental constitutional right to testify. *State v. Iromuanya*, 282 Neb. 798, 806 N.W.2d 404 (2011). The right to testify is personal to the defendant and cannot be waived by defense counsel's acting alone. *Id.* But a trial court does not have a duty to advise the defendant of his or her right to testify or to ensure that the defendant waived this right on the record. *Id.* Instead, defense counsel bears the primary responsibility for advising a defendant of his or her right to testify or not to testify, of the strategic implications of each choice, and that the choice is ultimately for the defendant to make. *Id.* The competence and soundness of defense counsel's tactical advice is crucial to whether counsel has presented sufficient information to the defendant to permit a meaningful voluntary waiver of the right to testify. *Id.* Defense counsel's advice to waive the right to testify can present a valid claim of ineffective assistance in two instances: (1) if the defendant shows that counsel interfered with his or her freedom to decide to testify or (2) if counsel's tactical advice to waive the right was unreasonable. *State v. Johnson*, 298 Neb. 491, 904 N.W.2d 714 (2017).

Here, Wiley alleges that he consulted with trial counsel, who advised him not to testify. Wiley contends that it was imperative that he testify to "refute the allegations made by Jacobe, her son and the other state witnesses." Brief for appellant at 35. Wiley also claims that only he "could testify about the nature of his relationship with Jacobe, her tendency for violence, how he [came] to know Jacobe by buying pills from her and other evidence crucial to his defense" including whether he and Jacobe "were in an intimate relationship." *Id.* We note that Wiley contends that he disagreed with his counsel's advice not to testify, but the record reflects that Wiley voluntarily waived his right to testify on the record. Trial counsel stated, on the record, that he had a chance to discuss with Wiley whether or not to testify. Then, later, the following colloquy occurred between the court, trial counsel, and Wiley:

> THE COURT: Okay. Counsel, then I take it that [Wiley] has decided not to testify; is that correct?
>
> [Trial counsel]: That is correct, Your Honor.
>
> THE COURT: And, [Wiley], you're aware you have a right to testify. Are you aware of that?
>
> [Wiley]: Yes, sir.
>
> THE COURT: All right. And your attorney indicates you've chosen not to testify; is that correct?
>
> [Wiley]: Yes, sir.
>
> THE COURT: All right. Has anybody forced you or threatened you or promised you anything to get you to waive your right to testify -- or not to testify?
>
> [Wiley]: No, Your Honor. Um --
>
> THE COURT: I'm just asking.
>
> [Trial counsel]: I think he has the right to remain silent, Judge, so.

[Wiley]: No.

THE COURT: All right.

[Wiley]: No. Your Honor, it's just --

THE COURT: Well, Mr. Wiley, hold on. I just asked if you've chosen to not testify if that's your choice.

[Wiley]: You also asked me was I threatened and (indiscernible) so I chose to explain.

THE COURT: All right. And is that a yes? Are you saying yes?

[Wiley]: No, Your Honor. Never mind.

THE COURT: All right. I just want to make sure that you're freely and voluntarily choosing not to testify. Is there any question about that counsel?

[Trial counsel]: No, Your Honor.

The contents of Wiley's conversations with his attorney which led to his decision not to testify are not contained in the record before us. Because the record is insufficient for us to review this claim on direct appeal, this claim is preserved.

### (g) Failure to Object to Reopening of Case

Wiley's seventh allegation is that trial counsel was ineffective in failing to object to the trial court reopening the case to establish enhancements after the initial sentence had been pronounced. Having found earlier in this opinion that there was no error by the district court in vacating Wiley's illegal sentence, holding an enhancement hearing, and resentencing Wiley, trial counsel could not have been ineffective in failing to object. See *State v. Martinez*, 302 Neb. 526, 924 N.W.2d 295 (2019) (defense counsel not ineffective for failing to raise argument that has no merit). This claim fails.

### (h) Failure to Communicate and Lack of Preparation for Trial

Wiley's eighth allegation is that trial counsel was ineffective in failing to communicate with Wiley and being unprepared for trial by failing to be "better prepared" to cross-examine the State's witnesses, failing to secure witnesses to testify for the defense at trial, and failing to recognize the need for Wiley to testify. Wiley also contends that trial counsel did not provide him with copies of discovery materials.

Wiley's claim that trial counsel was ineffective in failing to communicate with Wiley alleges that counsel "never had time to explain the case to [Wiley] or to explain the general processes of a trial." Brief for appellant at 39. Wiley further alleged that when he "called and wrote his trial counsel asking to prepare for trial," his "[t]rial counsel either did not respond, was not in his office when [Wiley] called, was otherwise unavailable or did not meet with [Wiley] for a meaningful amount of time to prepare for trial." *Id*. This claim has been sufficiently pled, but the record is insufficient to address this claim on appeal.

Wiley's claim that his trial counsel was unprepared for trial by failing to be "better prepared" to cross-examine the State's witnesses and failing to secure witnesses to testify for the defense at trial are not alleged with sufficient particularity. He does not allege how trial counsel could have been "better prepared" for cross-examination or what counsel should have elicited on

cross-examination and from which of the State's witnesses. He further fails to identify what witnesses trial counsel should have secured to testify for the defense. As a result, Wiley has failed to allege sufficient factual allegations of conduct to constitute deficient performance by trial counsel on these claims.

Regarding Wiley's claim that trial counsel was ineffective for failing to recognize the need for Wiley to testify, we found earlier that the record on appeal is insufficient to review this claim but that the claim is preserved.

## VI. CONCLUSION

In sum, we have considered and rejected Wiley's claims that the district court erred by holding an enhancement hearing after vacating its initial sentence and that the sentences imposed were excessive. Further, we find that the following claims by Wiley regarding ineffective assistance of counsel were not sufficiently pled: failing to object to the State's motion in limine regarding specific acts of violence by Jacobe and failing to present the justification of self-defense; failing to call as witnesses the "neighbor woman," Jacobe's best friend, and the lead investigating officer to test the veracity of other State witnesses; failing to present evidence that Jacobe was a confidential informant for the Lincoln Police Department and involved in the sale of prescription pills to show motive for Jacobe to falsify her report; and being unprepared for trial by failing to be "better prepared" to cross-examine the State's witnesses and failing to secure witnesses to testify for the defense at trial.

Further, we rejected Wiley's claims that his trial counsel was ineffective for failing to emphasize to the jury the inconsistent dates of the offense as testified to by witnesses and in failing to object to the trial court's reopening of the case to allow the State to establish enhancements after the initial sentence had been pronounced.

Finally, we determined that the record on appeal was insufficient to address Wiley's claims that his trial counsel was ineffective in failing to ensure that Wiley was dressed in street clothing and not in restraints for the trial, in advising him not to testify in his defense, and that trial counsel was ineffective in failing to communicate with Wiley.

AFFIRMED.