IN THE NEBRASKA COURT OF APPEALS

MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

STATE V. BRADLEY

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

DONTEVIAN L. BRADLEY, APPELLANT.

Filed April 20, 2021.    No. A-20-598.

Appeal from the District Court for Lancaster County: LORI A. MARET, Judge. Affirmed.

Gerald L. Soucie for appellant.

Douglas J. Peterson, Attorney General, and Kimberly A. Klein for appellee.

MOORE, RIEDMANN, and BISHOP, Judges.

BISHOP, Judge.

## I. INTRODUCTION

Dontevian T. Bradley appeals from the order of the Lancaster County District Court denying his motion for postconviction relief without an evidentiary hearing. We affirm.

## II. BACKGROUND

### 1. FACTUAL BACKGROUND

On the morning of November 15, 2016, Bradley was arguing with his girlfriend outside of an apartment building. Lavon M., Nathaniel W., and two other employees of a roofing company were roofing a house across the alley from the apartment building. After the argument between Bradley and his girlfriend became physical, the roofers verbally intervened. Upset over that intervention, Bradley procured a handgun from nearby and threatened the roofers with that handgun. One of the roofers called Kevin B., the owner of the roofing company, to report the incident and that a gun had been pulled. Kevin drove to the scene with Layne A., another employee

- 1 -

of the roofing company, and called the police upon his arrival. A 16-year-old mutual friend of Bradley and his girlfriend also witnessed the entire incident. The situation continued until police arrived and arrested Bradley. The police did not locate a handgun, but a bullet was discovered and taken by police later that same day. See *State v. Bradley*, No. A-17-644, 2018 WL 3868987 (Neb. App. Aug. 14, 2018) (selected for posting to court website).

## 2. TRIAL AND DIRECT APPEAL

Following a jury trial, Bradley was convicted of possession of a firearm by a prohibited person, terroristic threats, use of a firearm to commit a felony, and tampering with a witness or informant. The district court sentenced Bradley to consecutive sentences totaling 18 to 27 years' imprisonment. This court affirmed Bradley's convictions and sentences on direct appeal. See *State v. Bradley, supra*. Bradley's trial counsel also represented him on direct appeal.

## 3. POSTCONVICTION

On August 5, 2019, Bradley, pro se, filed a "Verified Petition for Post-Conviction Relief." Subsequently, Bradley retained new counsel and filed his "1st Amended Verified Motion for Postconviction relief" on February 23, 2020. In this amended motion, Bradley alleged three grounds for relief. "GROUND ONE" claimed there was prosecutorial misconduct at trial when the State "failed to provide . . . the Nebraska and Illinois criminal records of witnesses after request" by Bradley's trial counsel and failed to correct "materially false . . . testimony . . . presented to the jury." "GROUND TWO" alleged he received ineffective assistance of trial counsel when counsel did not investigate the criminal history of the State's witnesses, did not depose the State's witnesses, and did not pursue independent DNA testing of the .380 bullet offered as evidence at trial. "GROUND THREE" claimed he received ineffective assistance of appellate counsel when counsel "failed to recognize from the appellate record" those same issues of prosecutorial misconduct and ineffective assistance of trial counsel and did not move to withdraw so new counsel could have been appointed on Bradley's direct appeal.

In its responsive pleading, the State motioned the district court to deny Bradley's motion for postconviction relief without an evidentiary hearing. The State asserted that Bradley's claims of prosecutorial misconduct were procedurally barred and further argued Bradley failed to allege sufficient facts to establish his counsel was ineffective at trial and on direct appeal.

In its order entered on July 28, 2020, the district court denied Bradley's motion for postconviction relief without an evidentiary hearing. The court found that Bradley's claims of prosecutorial misconduct were procedurally barred because these claims "were known to [Bradley] at the time of his direct appeal and should have been raised at that time." Regarding Bradley's claims of ineffective assistance of trial counsel and direct appellate counsel, the court determined Bradley failed to make any factual allegations which demonstrated a denial or infringement of his constitutional rights, and he failed to present any evidence that but for his alleged claims of ineffective assistance of counsel, there was any reasonable probability that the outcome of his case would have been different.

Bradley appeals.

## III. ASSIGNMENT OF ERROR

Bradley assigns, condensed and restated, that the district court erred in failing to grant him an evidentiary hearing as to all three grounds alleged in his amended motion for postconviction relief.

## IV. STANDARD OF REVIEW

In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief. *State v. Martinez*, 302 Neb. 526, 924 N.W.2d 295 (2019).

Whether a claim raised in a postconviction proceeding is procedurally barred is a question of law which is reviewed independently of the lower court's ruling. *State v. Hessler*, 305 Neb. 451, 940 N.W.2d 836 (2020).

## V. ANALYSIS

### 1. PRINCIPLES OF POSTCONVICTION RELIEF

Postconviction relief is available to a prisoner in custody under sentence who seeks to be released on the ground that there was a denial or infringement of his or her constitutional rights such that the judgment was void or voidable. *State v. Newman*, 300 Neb. 770, 916 N.W.2d 393 (2018). In a motion for postconviction relief, the defendant must allege facts which, if proved, constitute a denial or violation of his or her rights under the U.S. or Nebraska Constitution, causing the judgment against the defendant to be void or voidable. *State v. Newman, supra*. In the absence of alleged facts that would render the judgment void or voidable, the proper course is to overrule the motion for postconviction relief without an evidentiary hearing. *State v. Allen*, 301 Neb. 560, 919 N.W.2d 500 (2018).

A trial court must grant an evidentiary hearing to resolve the claims in a postconviction motion when the motion contains factual allegations which, if proved, constitute an infringement of the defendant's rights under the Nebraska or federal Constitution. *State v. Newman, supra*. If a postconviction motion alleges only conclusions of fact or law, or if the records and files in a case affirmatively show the defendant is entitled to no relief, the court is not required to grant an evidentiary hearing. *Id.* Thus, in a postconviction proceeding, an evidentiary hearing is not required (1) when the motion does not contain factual allegations which, if proved, constitute an infringement of the movant's constitutional rights; (2) when the motion alleges only conclusions of fact or law; or (3) when the records and files affirmatively show that the defendant is entitled to no relief. *Id.*

With those principles in mind, we proceed to address the grounds for postconviction relief alleged by Bradley.

### 2. PROSECUTORIAL MISCONDUCT

Under "GROUND ONE," Bradley raised two claims of prosecutorial misconduct. However, it is well established that a petition for postconviction relief may not be used to obtain review of issues that were or could have been reviewed on direct appeal. *State v. Dubray*, 294 Neb. 937, 885 N.W.2d 540 (2016). Any attempts to raise issues at the postconviction stage that were or

could have been raised on direct appeal are procedurally barred. *Id*. The district court correctly concluded that Bradley's claims "related to prosecutorial misconduct" were procedurally barred; we address each claim in turn.

### (a) Failure to Disclose Criminal Histories of Witnesses

Prior to trial, Bradley's counsel filed "a motion for leave to take depositions, motion for discovery, and motion for disclosure of exculpatory and impeachment evidence under *Brady v. Maryland*[, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963)]." Brief for appellant at 24. In the motion for discovery, Bradley's counsel specifically requested information regarding "[t]he known criminal history of . . . State's witness." *Id.* The State had called the roofing company employees, the company's owner, and other witnesses to testify at trial. Lavon stated on direct examination that he had his "own criminal record," "served time in the penitentiary," and "used to be an active gang member." No information regarding any other witness' criminal history was presented at trial. Bradley's motion for postconviction relief contains attached records indicating Lavon and Kevin had criminal convictions in Nebraska that could have been used to impeach their testimony at trial.

We note, however, that Lavon's testimony at trial concerning his criminal background demonstrates that any nondisclosure of his criminal records was known at the time of direct appeal. This knowledge would also have put Bradley and his trial counsel on notice that the criminal histories of other witnesses may not have been disclosed. We agree with the district court that this claim is procedurally barred, as it could have been raised on direct appeal. See *State v. Dubray, supra*.

### (b) Failure to Correct False Testimony

In his amended postconviction motion, Bradley's factual allegations regarding Officer Brandl related to the officer's testimony about fingerprint testing on the cartridge collected from the scene. When asked what the results of the testing were, Officer Brandl responded "negative," and that no fingerprints were found. Bradley claimed Officer Brandl swabbed the cartridge to obtain DNA testing and that a fingerprint examination would have had to be completed before swabbing the cartridge. As a result, he claimed Officer Brandl "effectively wiped [the cartridge] clean of fingerprints" when he collected it from the scene. He therefore claims on appeal that based on the available reports and evidence outside the record, the claim by Officer Brandl that a fingerprint examination was conducted and the results were "negative" was false. He contends it "would have been impossible to check for fingerprints as any impressions would have been destroyed by [Officer] Brandl." Brief for appellant at 21. Bradley further asserts the prosecution elicited Officer Brandl's testimony and "had the same reports as were provided to defense counsel as were attached to the amended motion for postconviction relief" and therefore the prosecution "had the legal and ethical obligation to correct this false testimony . . . ." *Id.* at 26. He argues the prosecution's failure to correct this testimony amounted to misconduct and there is a question as to whether trial counsel knew of the misconduct, and if so, "what reasons existed for not objecting, moving for a mistrial, and preserv[ing] the issue for appeal." *Id.* at 28.

We note that Bradley asserts in his brief that the reports used to support his claim that Officer Brandl's testimony was false "were provided to defense counsel . . . ." *Id.* As such, the

alleged falsity of Officer Brandl's testimony and corresponding prosecutorial misconduct were known to Bradley at the time of his direct appeal. This claim of prosecutorial misconduct is therefore procedurally barred. See *State v. Dubray, supra*.

### 3. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL CLAIMS

Bradley's claims under "GROUND TWO" relate to alleged ineffective assistance from his trial counsel in several aspects.

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Martinez*, 302 Neb. 526, 924 N.W.2d 295 (2019). To show that counsel's performance was deficient, the defendant must show counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area. *State v. Newman*, 300 Neb. 770, 916 N.W.2d 393 (2018). To show prejudice under the prejudice component of the *Strickland* test, the defendant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different. *State v. Martinez, supra*. A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome. *Id.* The two prongs of this test may be addressed in either order. *Id.*

We note again that Bradley had the same counsel on direct appeal as he had at trial, and he has retained new counsel in this postconviction action. A motion for postconviction relief asserting ineffective assistance of trial counsel is procedurally barred when (1) the defendant was represented by a different attorney on direct appeal than at trial, (2) an ineffective assistance of trial counsel claim was not brought on direct appeal, and (3) the alleged deficiencies in trial counsel's performance were known to the defendant or apparent from the record. *State v. Williams*, 295 Neb. 575, 889 N.W.2d 99 (2017). Bradley's claims of ineffective assistance of trial counsel are therefore not procedurally barred, and we proceed to address his claims in turn.

### (a) Failure to Investigate Witnesses' Criminal Histories

Bradley alleges two grounds of ineffective assistance of counsel regarding trial counsel's failure to investigate the criminal histories of the State's witnesses. He claims trial counsel was ineffective in failing "to conduct a JUSTICE search of the criminal records of the State's witnesses" and in failing "to take depositions where he would have discovered the criminal histories of witnesses." Brief for appellant at 26. It was discovered later that Lavon and Kevin had prior criminal convictions in Nebraska which could have been validly used to try to attack the credibility of their testimony at trial.

For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record during cross-examination, but only if the crime was punishable by death or imprisonment in excess of 1 year, or if the crime involved dishonesty or false statement regardless of the punishment. See Neb. Evid. R. 609, Neb. Rev. Stat. § 27-609 (Reissue 2016). However, evidence of such a conviction is not admissible if a period of more than 10 years has elapsed since the date of such

conviction or the release of the witness from confinement, whichever is later. See *id*. See, also, *State v. Stricklin*, 290 Neb. 542, 861 N.W.2d 367 (2015) (§ 27-609 permits evidence of witness' crime, but once conviction established, inquiry must end there; it is improper to inquire into nature of crime, details of offense, or time spent in prison).

As noted previously, Lavon testified at trial that he had his "own criminal record," "served time in the penitentiary," and "used to be an active gang member." We observe that by virtue of Lavon's testimony, the jury was aware that he had a criminal background, was incarcerated, and was at one point affiliated with a gang. Accordingly, the jury was aware of Lavon's criminal background when considering the credibility of his testimony.

We also note that Kevin was not present to observe Bradley's conduct underlying his convictions. Kevin testified that he received a call from one of the roofers at the job site claiming "a guy hit a girl and . . . there was a gun pulled" before he arrived on the scene. Kevin recounted that he observed Bradley and his girlfriend "kind of talking closely" and arguing, but he did not testify that he saw Bradley with a gun or observed Bradley in any physical altercation. We further note that in addition to the testimony of Lavon and the other roofers who witnessed Bradley's actions that morning, the 16-year-old witness further corroborated their testimony that the argument between Bradley and his girlfriend became physical and that Bradley used a handgun to threaten the roofers.

While a witness' criminal history may be used to attack his or her credibility, we do not find trial counsel's failure to do so in this case to have caused actual prejudice. In light of Lavon's own disclosure of his criminal background and prior gang affiliation, the limited scope of Kevin's testimony, and the entire record before us, Bradley cannot show a reasonable probability that the outcome of the trial would have been different had trial counsel deposed these witnesses regarding their criminal histories, or otherwise investigated their criminal backgrounds. The district court therefore did not err in denying Bradley's motion for postconviction relief without an evidentiary hearing on this basis.

(b) Failure to Depose Witnesses Regarding Firearm

Bradley also alleges trial counsel was ineffective in failing to depose Lavon, Nathaniel, and Layne to learn "the specifics of their ability to identify .380 semi-auto pistols." Brief for appellant at 26. Notably, Bradley does not explain how a possible misidentification of the type of gun he used to threaten the roofers would have had any bearing on proving the elements of the crimes for which he was convicted, and thus, he has not set forth allegations which, if proved, would constitute an infringement on his constitutional rights. That said, we nevertheless set forth portions of the record related to descriptions of the gun provided by the witnesses Bradley claims should have been deposed.

*(i) Lavon's Statements and Testimony*

At trial, Lavon testified that after intervening in the conflict between Bradley and his girlfriend, Bradley returned to the house and "proceeded to come back with a .380 Hi-Point gun" that he pointed at Lavon and the other roofers after "rack[ing] it back." When asked by the prosecution how he knew it was a .380 Hi-Point, Lavon answered that he "owned one of them; so

[he] [knew] exactly what it looked like." He went on to describe it as "black on top, a silver chrome. It was a silver color on the middle, black at the bottom."

In his motion for postconviction relief, Bradley alleged that Lavon "was never presented with a 'line-up' at a similar distance with similar firearms [to a Hi-Point .380] by law enforcement, [the] prosecutor," or Bradley's trial counsel "to determine whether he could distinguish between various calibers or models of semi-automatic pistols." However, we observe that Bradley's trial counsel cross-examined Lavon regarding his identification of the gun held by Bradley at the time of the incident. Trial counsel further impeached Lavon with his statements to police, where Lavon described the gun in Bradley's possession as "gray and black," which was inconsistent with Lavon's testimony indicating the gun was black and "silver chrome."

*(ii) Nathaniel's Statements and Testimony*

Nathaniel testified at trial that he witnessed Bradley rack the handgun twice and approach himself and the other roofers while still holding the handgun. In describing the gun, Nathaniel further stated that he "believed [it] to be a Hi-Point 380" that was colored "[b]lack with a chrome strip."

Bradley claims Nathaniel "was never requested to identify a 'Hi-Point 380' from a line-up of firearms and that his description did not match a Hi-point 380." Brief for appellant at 20. Bradley alleged in his motion for postconviction relief that the following colloquy took place between Nathaniel and an investigator on December 28, 2016:

> NATHANIEL W[.]: People said it was like a high point 380 and I really didn't know, it just looked a [sic] chrome and, you know, on the top side, and then the rest of the gun it was black so.
>
> INV. BERRY: So the slide was silver.
>
> NATHANIEL W[.]: Yeah.

Bradley further argues that "there was a Ruger .380 at the scene belonging to [Layne] that appeared to match the description provided by" Nathaniel to the investigator. *Id.*

The record shows that on cross-examination, Nathaniel affirmed that "when [he] talked to the officers, [he] did not know that [Bradley's handgun] was a 380." Bradley's trial counsel specifically asked Nathaniel why his testimony at trial was "different . . . than when [he] talked to the officers" after the incident. Nathaniel answered that after the incident when the roofers "found the bullet, [they] discovered it had the markings of .380 on it; so [he] just assume[d] . . . .380 goes with 380."

*(iii) Layne's Testimony*

Layne testified at trial that he arrived to the scene with Kevin after receiving a phone call that "somebody had pulled a gun on [an employee] for stepping in and stopping a domestic abuse." Layne affirmed that when he arrived, he saw "Bradley arguing with a female in the alley." After the police left, Layne "went to [his] van and got [his] firearm out . . . and went back to the job site" for "the safety of [the roofers]." He stated that he has "a Ruger .380," and he further described the bullet found at the scene after the police left was "a target round" and not one of his. On

cross-examination, Layne denied seeing Bradley with a firearm when he arrived at the scene with Kevin.

Bradley alleged in his motion for postconviction relief that Layne "was never deposed by [trial counsel] nor did he provide a recorded statement to law enforcement prior to trial that was provided in discovery." Bradley further asserts in his brief on appeal that Layne's "personal .380 firearm would seem to 'match' the description given by the other roofers which would be a remarkable coincidence." Brief for appellant at 20. However, Layne did not testify as to the appearance of his Ruger .380, and we find no other testimony or exhibit specifying the appearance of that firearm. The only reference to the appearance of a Ruger .380 comes from Bradley's motion in which he claimed "[t]here is one common model of Ruger .380 with a silver slide and black frame identical to the description given by [Nathaniel]."

### (iv) Summary

We initially observe that trial counsel thoroughly cross-examined Lavon and Nathaniel regarding their statements to police and testimony on direct examination concerning the handgun's description. More importantly, and as stated previously, Bradley does not explain how any possible misidentification of the caliber or model of the gun would have had any bearing on the testimony from multiple witnesses that Bradley threatened the roofers with a gun. There was corroborating testimony from the 16-year-old witness that Bradley was "pointing the gun at [the roofers] and waving it around" during the incident. There was consistent evidence from multiple witnesses that Bradley made threats while possessing a gun; the specific identification of the type of gun has no bearing on the elements of the crimes for which Bradley was convicted. We find neither deficient performance nor prejudice caused by trial counsel's failure to depose Lavon and Nathaniel related to their descriptions of the gun in light of the record.

With respect to Layne, his testimony pertained to Bradley's possession of a handgun only to the extent that he testified he received a phone call that Bradley had pulled a gun on the roofers. The mere possibility that Layne's personal handgun may appear similar to the descriptions given by the other witnesses does not undermine confidence in the trial's outcome in light of the record before us.

Bradley has not shown a reasonable probability that the outcome would have been different had trial counsel deposed Lavon, Nathaniel, and Layne on these matters, and the district court did not err in so denying his motion without an evidentiary hearing on this basis.

### (c) Failure to Depose Officer Brandl

Bradley asserts that his trial counsel was ineffective for "failing to depose Ofc. Brandl as to the sequence of collecting from the scene, tagging into evidence, and fingerprint examination of Ex 18 (live .380 bullet) that he claimed had been performed at the time of trial." Brief for appellant at 6.

Officer Brandl testified at trial as to how the .380 bullet recovered from the scene was handled. He stated that at "about one o'clock," he received a call from the roofers regarding an "unspent bullet in the alley" one of the roofers found at the scene. He returned to the scene and recovered the bullet, "pick[ing] it up with gloves" and "put[ting] it in a plastic evidence bag" before taking it to "the LPD property unit." Officer Brandl further testified that he asked to have a

fingerprint examination on the bullet done and requested the Nebraska Crime Laboratory to test a DNA swab from the bullet. He reported that the fingerprint examination returned "[n]egative" as "no fingerprints were found." He also reported that "the State denied the request" to test the DNA swab due to a policy in place against testing for trace DNA evidence.

Even assuming that Bradley's trial counsel was deficient in failing to depose Officer Brandl, Bradley cannot show a reasonable probability that the trial's outcome would have been different had counsel deposed Officer Brandl regarding his handling of the bullet. Bradley's conviction did not hinge on whether fingerprints could be found on the bullet, and Officer Brandl's handling of the bullet does not pertain to Bradley's possession of a handgun and use of that handgun to threaten the roofers. His claim of ineffective counsel on this basis therefore fails, and the district court did not err in so denying his motion for postconviction relief without an evidentiary hearing.

### (d) Failure to Seek Independent DNA Testing of Unfired Bullet

Bradley asserts on appeal his trial counsel was ineffective by "[a]ccepting the decision of the Nebraska Crime Laboratory to not test the unfired .380 bullet for DNA, when the existence of DNA from a person different from Mr. Bradley would be exculpatory." Brief for appellant at 6. However, Bradley does not explain why such evidence would be exculpatory. As noted by the district court in its order denying relief, the "bulk of the State's evidence against [Bradley] consisted of eyewitness testimony[,]" and the "bullet found on the scene was not the 'main' evidence that tended to prove [Bradley's] guilt." The case did not turn on the evidence related to the bullet. Bradley's broad, unsupported, and conclusory assertion that the existence of DNA from a person different from himself would be exculpatory is not supported by the record. The district court did not err in denying his motion for postconviction relief without an evidentiary hearing on this basis.

### 4. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

On appeal, Bradley alleges the district court erred in denying his motion for postconviction relief without an evidentiary hearing on the ground that his appellate counsel was ineffective "for not alleging the grounds for reversal set forth in GROUND ONE and GROUND TWO" of his motion set forth above. Brief for appellant at 6.

We again note that Bradley had the same counsel on direct appeal as at trial, and Bradley retained new counsel in seeking postconviction relief. This is therefore Bradley's first opportunity to raise a claim of ineffective assistance of direct appellate counsel. However, while Bradley claimed in his motion for postconviction relief that his appellate counsel "should have moved to withdraw and new counsel appointed to address on direct appeal the issues" regarding prosecutorial misconduct and ineffective assistance of trial counsel, Bradley does not assign as error appellate counsel's failure to motion to withdraw during the direct appeal. We therefore decline to address that matter. See *State v. McGhee*, 280 Neb. 558, 787 N.W.2d 700 (2010) (alleged error must be both specifically assigned and specifically argued in brief of party asserting error to be considered by appellate court).

Additionally, when a claim of ineffective assistance of appellate counsel is based on the failure to raise a claim on appeal of ineffective assistance of trial counsel, an appellate court will

look at whether trial counsel was ineffective under the *Strickland v. Washington* test. See *State v. Dubray*, 294 Neb. 937, 885 N.W.2d 540 (2016). If trial counsel was not ineffective, a defendant cannot be prejudiced by appellate counsel's failure to raise the issue. *Id*. Since we have already determined that the ineffective assistance of trial counsel claims asserted by Bradley in "GROUND TWO" were properly denied an evidentiary hearing by the district court, Bradley's claims of ineffective assistance of appellate counsel as to those grounds also fail. We will therefore not further address any claims raised under "GROUND TWO" with regard to appellate counsel failing to raise such claims.

However, if the claimed deficiency of appellate counsel's performance is the failure to raise a claim on appeal, the court will look at the strength of the claim that appellate counsel failed to raise. *Id.* Much like claims of ineffective assistance of trial counsel, the defendant must show that but for counsel's failure to raise the claim, there is a reasonable probability that the outcome would have been different. *Id.* The prejudice must be of such severity that it renders the result of the trial unreliable or the proceeding fundamentally unfair. *Id.*

With the above principles in mind, we proceed to evaluate Bradley's ineffective assistance of appellate counsel only as to those claims set forth under "GROUND ONE" related to alleged prosecutorial misconduct, which were not raised on direct appeal.

(a) Counsel's Failure to Raise on Direct Appeal
Nondisclosure of Witnesses' Criminal Histories

As set forth previously in this analysis, the State did not disclose to Bradley's trial counsel the criminal histories of the State's witnesses despite Bradley's trial counsel filing motions requesting such information. Bradley alleges that this failure amounted to prosecutorial misconduct that should have been raised on direct appeal.

In *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), the U.S. Supreme Court held that the prosecution has a duty to disclose all favorable evidence to a criminal defendant prior to trial. *State v. Harris*, 296 Neb. 317, 893 N.W.2d 440 (2017). Favorable evidence includes both exculpatory and impeachment evidence. *Id.* The prosecution's undisclosed evidence must be material either to guilt or to punishment, and the prosecution's suppression of favorable evidence violates a defendant's due process right to a fair trial only if the suppressed evidence is sufficiently significant to undermine confidence in the verdict. *Id.* The Court adopted the standard of materiality that it had relied on in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), for all claims of prosecutorial suppression of favorable material evidence: "'The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *State v. Harris*, 296 Neb. at 333, 893 N.W.2d at 453 (quoting *United States v. Bagley*, 473 U.S. 667, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985)).

To summarize, there are three elements to a claim brought under *Brady v. Maryland, supra*, asserting violation of a defendant's rights to due process by the prosecution's failure to disclose favorable evidence. First, the evidence must be favorable in that it is either exculpatory or impeaching. See *State v. Harris, supra*. Second, the prosecution must have suppressed that evidence, regardless of whether that suppression was willful or inadvertent. See *id*. Finally, the defendant must have been prejudiced by that suppression such that there is a reasonable probability

the outcome would have been different had the prosecution disclosed that favorable evidence. See *id.* But when the State has suppressed more than one item of favorable material evidence, a court must also consider whether prejudice occurred from the suppressed evidence collectively, not simply on an item-by-item basis; that is, it must assess its cumulative effect on the fact finder in the light of other evidence. *Id.*

As previously noted in our analysis, the State called two witnesses, Lavon and Kevin, who had criminal convictions that could have been used to attack their credibility. Bradley's trial counsel filed motions requesting such information, and it is not disputed that the State failed to disclose both witnesses' criminal records.

As we previously addressed, with respect to Lavon, the record demonstrates he testified that he had his "own criminal record," "served time in the penitentiary," and "used to be an active gang member." His criminal history was therefore considered by the jury in evaluating his credibility as a witness regardless of the State's failure to disclose such criminal record to Bradley or his trial counsel.

With respect to Kevin, the record does not show any similar testimony in which he referenced his own criminal history. However, Kevin was not an eyewitness to Bradley's possession of a handgun or other events before his arrival. He testified that he arrived to the scene of the incident after the fact following a phone call that "a guy hit a girl and . . . there was a gun pulled" on the roofers. He further recounted that he saw "[a] gentleman and a female kind of talking closely" and it "[l]ooked like they were arguing." He did not testify that he saw Bradley with a handgun at the scene or otherwise involved in a physical altercation.

Based on the foregoing, we conclude that Bradley was not prejudiced by the State's failure to disclose the criminal histories of Lavon and Kevin. Lavon's criminal history and prior gang affiliation was known to the jury; its nondisclosure could not have prejudiced Bradley in light of Lavon's own testimony. Further, given the limited scope of Kevin's testimony and the entire record before us, we conclude that there is not a reasonable probability that had Kevin's criminal history been disclosed to the defense, the trial's result would have been different. Bradley was not prejudiced by the State's failure to disclose these witnesses' criminal histories as there is no reasonable probability that the outcome would have been different had the information been disclosed as requested. Bradley's appellate counsel was therefore not ineffective in not raising this claim on direct appeal, and we find no error in the district court's denial of his motion for postconviction relief without an evidentiary hearing on this basis.

(b) Counsel's Failure to Raise Claim Regarding False Testimony

As set forth previously, Bradley alleges that Officer Brandl gave false testimony and such testimony was not corrected by the prosecution. Officer Brandl affirmed during his testimony that he requested a fingerprint examination be done on the bullet discovered at the scene. He further testified that "no fingerprints were found."

On appeal, Bradley asserts "the claim by Ofc. Brandl that a fingerprint examination was conduct[ed] and the results 'negative' was false" based on records available to Bradley's counsel and the prosecution. Brief for appellant at 21. These records indicated Officer Brandl first went to recover the unfired .380 bullet discovered by the roofers at 1:00 p.m. on November 15, 2016. That bullet was then tagged into evidence at 1:22 p.m. on that same day. Officer Brandl shortly

thereafter, at 1:35 p.m., tagged into evidence a DNA swab taken from that bullet. Bradley asserts "[i]t would have been impossible to check for fingerprints as any impressions would have been destroyed by" Officer Brandl. *Id.*

Bradley's argument amounts to a conclusory allegation that Officer Brandl falsely testified that a fingerprint examination was conducted on the .380 bullet. Bradley asserts no facts contradicting Officer Brandl's testimony that a fingerprint examination occurred and returned a negative result. Further, Bradley's convictions were based upon his possession of the handgun in question, and the bullet does not have any bearing on whether Bradley possessed a handgun and used it to threaten the roofers during the incident. Bradley has not sufficiently shown a reasonable probability that the outcome of his direct appeal would have been different had Bradley's appellate counsel raised this claim. The district court therefore did not err in denying Bradley's motion for postconviction relief without an evidentiary hearing on this basis.

## VI. CONCLUSION

For the reasons set forth above, we affirm the district court's denial of Bradley's motion for postconviction relief without an evidentiary hearing.

AFFIRMED.